## DUKE *vs.* FULLER.

Where the funds of a Freemason Lodge had accumulated under a by-law " that they should be appropriated for the good of the craft, or for the relief of indigent and distressed worthy masons, their widows, and orphans"—*held*, that the funds were in the hands of the acting members for a charitable use, and that a dissolution of the lodge and a division of the funds among the acting members, for their private use, was a violation of the trust on which said fund was raised.

Also, that no suit could be maintained by a member of said society against the treasurer, for his proportion of the funds, under said vote.

THIS was an action of assumpsit for money had and received, and was tried upon the general issue. It appeared in evidence that the plaintiff and defendant, with six other persons, were members of a society called Bible Lodge Society, No. 27, in Goffstown, which society possessed funds

to the amount of two hundred and fifteen dollars and sixteen cents, which were in the hands of the defendant, as treasurer.

Among the by-laws of the lodge, and which was the only one respecting the funds, was the following—"The furni- 'ture and funds of the lodge shall be considered as the joint 'and equal property of all the members, who shall, by a ma- 'jority of votes, have the management thereof for the good 'of the craft, or for the relief of indigent and distressed 'worthy masons, their widows and orphans."

By a by-law of the lodge there was to be held a communication in each year, in May.

Another of the by-laws provided, " that any member who 'neglected to attend the regular communication in May 'should thereby forfeit his membership, and be deprived of 'all the privileges and immunities of a member, unless re- 'stored by a vote of two thirds of the members present at a 'regular communication."

At the communication duly holden in May, 1835, the plaintiff not attending, the attending members "voted the lodge dissolved, and that the funds of the lodge should be equally divided according to the by-laws."

The funds were equally divided among the six attending members and the defendant, they severally taking their equal proportion, and no more.

On the 10th of July, 1837, the plaintiff demanded his proportion of the funds from the defendant, who had been treasurer and keeper of the funds of the lodge until the passing of the said last mentioned vote.

The defendant refused to pay over to the plaintiff any part of the funds, on the ground that he had forfeited his membership by neglecting to attend the regular communication of the lodge in May, 1835.

A verdict was taken, by consent, for the plaintiff for $26.89, subject to be amended, or set aside, and a verdict entered for the defendant, as the court might order.

*Bartlett,* and *Steele,* for the plaintiff.

*Farley,* for the defendant.

UPHAM, J.   It becomes important, in deciding the case before us, to determine the objects of the association known by the name of the Bible Lodge.

There is no suggestion that it had ever been incorporated. It appears, however, from the case as drawn, that the association had the ordinary officers of a corporation, such as treasurer and secretary; had funds belonging to it; had an annual meeting, or communication, in May of each year; and was governed by a code of by-laws.

By one of these by-laws it is provided, " that the furni- ' ture and funds of the lodge shall be considered as the joint ' and equal property of all the members, who shall, by a ma- ' jority of the votes, have the management thereof, for the ' good of the craft, or for the relief of indigent and distress- ' ed worthy masons, their widows and orphans."

This provision is applicable to all the funds of the association, whether derived from bequests, assessments, contributions, initiation fees, or other causes; and it is quite clear that while such a by-law exists, it is imperative as to the mode in which the funds collected under it shall be appropriated; and it also admits of doubt whether it can be rescinded in any manner so as to authorize a different application of funds previously received.

What, then, is the purpose for which these funds were received? Were they received for charitable uses? This can hardly be denied. The words in the by-law referred to are similar to those in the statute of charitable uses, of 43 Elizabeth.

The uses enumerated in the preamble of that statute, as *charitable,* and therefore sustained by law, are " gifts and ' devises for the relief of aged and impotent persons; for ' schools of learning, free schools, and scholars of universi- ' ties; for the education and preferment of orphans, help of

' young tradesmen and handicraftsmen ; for relief or redemp-
' tion of prisoners, and the aid or ease of any poor inhabit-
' ants," together with various other objects.   2 *Fonb. Eq.*,
*book* 2, *part* 2, *ch.* 1 ; 2 *Story's Com. on Eq. sec.* 1160.

The by-laws of the lodge appropriate its funds in pro-
moting " the good of the craft, or for relief of indigent and
distressed worthy masons, their widows and orphans."

The good of the craft can only be understood to mean the
furtherance of the general cause of freemasonry ; and this
surely cannot have been effected by abandoning the institu-
tion entirely, and dividing its ancient funds among a few
acting members ; neither can it be contended that such dis-
tribution was made for the relief " of indigent and distress-
ed worthy masons, their widows and orphans."

It does not appear how long the funds of the lodge had
been in process of collection.   The society at its dissolution
consisted of but eight members, including the parties to this
suit, and the funds exceeded two hundred dollars.   It can
hardly be supposed that this sum was received from these
individuals.   It had probably accumulated during a series of
years, from the initiation fees and assessments of other
members ; and it could not have been contemplated that the
members to whose immediate care for the time being this
fund was transmitted, would by vote appropriate the whole
to their private use.   Such an appropriation was a breach of
the specified object for which the fund was raised, and a vio-
lation of the pledged faith of the society.   Equally well
might any eleemosynary association or clearly public institu-
tion, the collections of which had been accumulating for
many years, divide at any time their property among its
acting members, in violation of the expressed design of their
institution.   Such a proceeding cannot be sanctioned by
any court, either of law or equity.

It may be asked, however, what shall be done with the
funds or property of such an institution, if the members re-
fuse to keep up their organization, and dissolve the associa-
tion, as they have done in this instance ?

Such a dissolution cannot be prevented. It is not only in the power of such an association, but of any body, duly incorporated, which was not created for the administration of political or municipal authority, to dissolve itself by its own assent. This has been repeatedly adjudged. 2 *Kent's Com.* (2d ed.) 305 ; *Angell & Ames on Corporations*, 507.

But it by no means follows that the members of an association, holding funds in trust, or of a body incorporated for eleemosynary purposes, can, on such dissolution, appropriate its funds among themselves. Mere monied corporations, whose funds are owned solely by the stockholders, and are not holden in any manner for charitable or public use, may do this, but no others.

The association may be dissolved, but the trust fund is not, therefore, to be either distributed or abandoned. It is an established maxim in equity, that no trust shall fail for want of a proper trustee. The funds of this and of any other charitable institution, may, therefore, be saved to carry out the original purposes and wishes of the donors or contributors.

"Whenever funds raised for charitable purposes are com- 'mitted to private individuals, or to a corporation, if there be 'any abuse or misuse of the same, a court of equity will in- 'terpose, at the instance of the attorney-general, or the par- 'ties concerned, to correct such abuse ; and the court may 'go the length, in cases of gross mismanagement, of taking 'the funds away, and committing the administration of 'them to other hands"; and the same course would be pursued in case of an abandonment of them by a dissolution of the association. 2 *Story's Com. on Eq.* 435, sec. 1191, *and authorities there cited ;* 2 *N. H. Laws* 75.

The division of the funds in this case was illegal and void ; and as this suit is brought by the plaintiff on the ground that being a member of the association at the time of the dissolution, he is entitled to his distributive share of

such funds, it is a suit without legal foundation, and cannot be sustained.

No one can rightfully claim such share as his individual property, notwithstanding the vote of the members. The funds should still be holden for their due application; and this application can be enforced whenever the proper proceedings are instituted for this purpose.

There must, therefore, be

*Judgment for the defendant.*