GEORGE W. RAY & others *vs.* LEWIS J. POWERS & another.

Hampden.    Sept. 26, 1882. — Jan. 3, 1883.    FIELD, COLBURN & HOLMES, JJ., absent.

The constitution of a voluntary association defined its object to be to stimulate a healthy interest in the breeding and management of pigeons and bantams, and to disseminate useful knowledge in relation thereto; gave the board of directors the charge and management of all public exhibitions of the society; and provided that each member should pay an initiation fee and an annual assessment. The society held a public exhibition and awarded premiums, and the expenses, including the premiums, were greater than the receipts. *Held,* that a bill in equity could be maintained, by those members who paid the loss, against other members for contribution, if the defendants participated in a vote to give the exhibition with premiums, or if they assented to such vote.

BILL IN EQUITY, by certain members of the New England Pigeon and Bantam Society, a voluntary association, against Lewis J. Powers and Charles S. Lincoln, to compel the defendants, as members of the society, to contribute their respective proportions of the amount of money lost on account of a public exhibition of the society, which loss the plaintiffs have been obliged to pay, and have paid in full.

At the hearing before *W. Allen,* J., William G. White, one of the plaintiffs and the treasurer of the society, testified substantially as follows: The New England Pigeon and Bantam Society

was organized at Springfield on April 4, 1878, and the persons mentioned in the bill were members thereof. The object of the society was to hold public exhibitions of pigeons and bantams, and the awarding of money premiums thereat, by judges selected for the purpose. The second meeting of the society was held on July 10, 1878, at which meeting a constitution and by-laws were adopted, by vote of the members present.* At this meeting, it was also voted that the society give a public exhibition in Springfield on December 10, 11, 12 and 13, 1878, and that the control and management of the same be referred to the board of directors. At a meeting of the society, held on July 31, 1878, a premium list of the exhibition was adopted by vote of the society. This premium list contained an accurate statement of all premiums that were offered and to be awarded at said exhibition, and the amount of money which would be required to pay the same. It also contained the rules which had been adopted for the management of the exhibition, and the constitution and by-laws of the society. At this meeting, the defendant Lincoln was present, and joined the association. A copy of this premium list was sent to every member of the association as soon as printed, which was directly after this meeting. The defendant Lincoln acted as judge at the exhibition referred to, and awarded a part of the premiums offered in said premium list.

White also testified that he personally requested the defendant Powers to join the society, informed him that there was to

---

* The constitution and by-laws of the society were put in evidence. Article 2 of the constitution defined the object of the society to be "to stimulate a healthy interest in the breeding and management of pigeons and bantams; to disseminate useful knowledge in relation thereto; and to establish an authoritative standard of excellence for the breeding and judging of pigeons."

Article 4, after defining the duties of various officers, was as follows: "The board of directors shall have the general control and management of all the affairs of the society, not herein delegated to other officers, shall have charge of, and be responsible for, all the property of the society except money in the treasury, and shall have the charge and management of any and all public exhibitions of the society."

Article 5 provided for the election of members, and also for the payment by each member of an initiation fee of $3, and an annual assessment of $2.

be a public exhibition at the time before stated, and desired his assistance at said exhibition; that he told Powers the amount which had been offered for premiums and the probable expenses of the exhibition, and sent him a copy of the premium list; that Powers objected to joining the society because it was not incorporated, and because he would be personally responsible in case of loss; that the witness told Powers that the society had voted to instruct the president to procure an incorporation of the society, and, after it was incorporated, there would be no personal liability; that Powers consented to become a member of the association, and that no meeting of the society was held after he became a member.

White also testified that no record was kept by the secretary of the doings of the society at its various meetings; that the exhibition was held under the management of the board of directors, and resulted in great loss, and the plaintiffs had paid the same; that, previous to the exhibition, a subscription paper to raise a fund to guarantee the society against loss was subscribed by a few members of the society, and by a number of persons who were not members thereof, but the money thus raised was not sufficient to pay the loss; and that the money paid by the plaintiffs was almost entirely in payment of the premiums awarded at said exhibition.

Lincoln testified that he received by mail a copy of the premium list referred to after it was printed, but did not read it, and was not familiar with its contents until a few days before the exhibition; that he had no knowledge of the provisions of the constitution and by-laws prior to its reception by mail, and prior to his becoming a member; that he acted as judge at said exhibition at the request of the officers of the society; and that he had before acted in the same capacity at other exhibitions of other societies.

Powers testified that he joined the society, if he joined it at all, some time during October or November 1878; that, after the conversation testified to by White, he consented to have him present his name for membership, and paid him the initiation fee of $3; that he had no recollection of receiving the premium list and constitution and by-laws referred to; that he never received any notice of a meeting of the society, and never attended

any; that he took no part in the exhibition, but attended it, and paid his admission fee thereto the same as others did.

The judge ruled that the evidence was not competent and sufficient to maintain the bill; ordered that the bill be dismissed; and, at the plaintiffs' request, reported the case for the determination of the full court. If the ruling was correct, the decree was to be affirmed; otherwise, such decree to be entered as the court might direct.

*W. G. White*, for the plaintiffs.

*E. H. Lathrop & T. M. Brown*, for the defendants.

C. ALLEN, J. This bill was dismissed on the ground that the evidence was not competent and sufficient to maintain it. But, upon consideration, we think the evidence might have warranted a decision for the plaintiffs, as against both of the defendants. It is true that neither the constitution nor the by-laws of the society provide for holding exhibitions with premiums, or for any further liability on the part of the members than for the payment of the initiation fee and annual assessment. But it was not inconsistent with the purposes of the society, as shown by the constitution, to hold exhibitions and award premiums. Mere membership would not bind anybody for any further payment than the initiation fee and annual assessment; but such members as participated in a vote to incur further expenses for an exhibition with premiums, or as assented to be bound by such vote, would be bound thereby. It therefore became a question of fact whether either or both of the defendants so participated· or assented. It was not necessary to prove such participation or assent by formal records. *Newell* v. *Borden*, 128 Mass. 31, 34. The testimony introduced was competent, and its sufficiency should be determined as a question of fact.

*Case to stand for a further hearing.*