CLIFFORD E. BROWN v. PHILIP STOERKEL AND JOHN GREGORY.

*Voluntary associations—Rights of members.*

1. Persons have a right to enter into purely benevolent and social organizations, having also in view the protection, benefit, and welfare of their members in their various employments, and to bind themselves as to their membership and rights in such societies, and the funds of the same, by the constitution and by-laws of the association which they adopt, or subscribe to after adoption; and such associations are in no sense partnerships. *Burt v. Lathrop,* 52 Mich. 106.

2. The articles of agreement of *such* an association, whether called a "constitution," "charter," "by-law," or by any other name, constitute a contract between the members which the courts will enforce, if not immoral or contrary to public policy or the law of the land.

3. Where all of the members in good standing in *such* an association, who according to its constitution and by-laws had sole control of its funds, made an assignment of certain money belonging to the association, which had been misappropriated by third parties, which assignment was made pursuant to a vote of the association at a regular lodge meeting, the assignee may maintain a suit for the recovery of said assigned money.

4. In such a case suspended members, who had a right to be re-instated upon payment of their arrearages of dues, may have had a contingent interest in the funds of the association, but they were not necessary parties to the assignment.

Error to Wayne. (Reilly, J.) Argued January 31, 1889. Decided February 20, 1889.

*Assumpsit.* Plaintiff brings error. Reversed, and judgment entered for plaintiff on the general verdict. The facts are stated in the opinion.

*George W. Walthew* and *Willis G. Clarke,* for appellant.

*Parker & Burton,* for defendants.

MORSE, J. This is an action of *assumpsit.*

The declaration contained three special counts, but the trial was had upon the third count alone, which alleged, in substance, that the defendants had converted and appropriated to their own use moneys belonging to Local Assembly No. 8,104 of the Knights of Labor, which was an unincorporated association, and that the members of said local assembly had assigned their right, title, and interest in said moneys over to plaintiff. The jury, in the Wayne circuit court, returned a general verdict in favor of the plaintiff for the sum of $355.50, but, in response to special questions submitted to them, found as follows:

"1. Did all the members of the 530 members contributing money to the Peninsular Car-works Assembly of Knights of Labor intend that the money so contributed should be used as initiation fees in a local assembly of the Knights of Labor as existing throughout the United States?

"*A.* Yes.

"2. Did all the members interested in the fund contributed join in the assignment to plaintiff?

"*A.* No.

"3. Did the members, organizing under the name of the 'Peninsular Car-works Assembly,' intend, when they organized, to form another and distinct organization, which should be a successor to the association so formed?

"*A.* Yes.

"4. Did any member who originally joined the Peninsular Car-works Association of the Knights of Labor ever withdraw from the order?

"*A.* No.

"5. Was it ever intended that the money contributed by the 530 original members should become the property of Local Assembly No. 8,104?

"*A*. Yes."

A motion was therefore made by the defendants that the general verdict of the jury be set aside, and that judgment be entered upon the second special verdict found by the jury, because the jury answered to the second special question that all the members "interested" in the fund contributed did not join in the assignment to the plaintiff. This motion was granted, and judgment thereupon entered for the defendants. The plaintiff brings error, and here insists that judgment be entered on the general verdict in his favor for the amount of such verdict.

Was the special verdict inconsistent with the general one? This is the point before us. In order to fully understand the question to be determined, it will be necessary to state the facts, about which there is but little, if any, dispute.

In May, 1886, there was a strike at the Peninsular Car-works. The men in the works formed a preliminary. organization, preparatory to forming a local assembly of the Knights of Labor. This preliminary body was called the "Peninsular Car-works Assembly," and was designed by its organizers to hold the workmen together until they could be initiated in squads into the Knights of Labor. When this was completed, the preliminary organization ceased to exist, and the society known as "Local Assembly No. 8,104 of the Knights of Labor," was formed, under the rules and laws of that order. The persons joining the preliminary organization were required to pay one dollar, and also another dollar when they were initiated into the local assembly of the Knights of Labor. The fund thus raised was to be used in assisting members

in need. Some of it was thus used, and in paying expenses, and some was deposited in the People's Savings Bank of Detroit. The money was put in the hands of Edward Heurion and the defendants, and they made the deposit, in all of $400. The defendants, Gregory and Stoerkel, drew this money from the bank,—$50 July 8, 1886; and the balance December 20, 1886. Gregory was treasurer of the association, and Stoerkel one of the trustees, at the time the deposit was made. Heurion was recording secretary. The defendants, on demand, refused to pay the money over to a committee of the local assembly or to plaintiff. Both of these associations were voluntary and unincorporated. There were 530 members of the preliminary organization. Some of the members did not go into the local assembly; quite a large number of them. One witness testifies that not over 100 of them went into the Knights of Labor Assembly No. 8,104; others swear that about 200 joined. The assignment claimed by the plaintiff was proven by a resolution passed at a meeting of Local Assembly No. 8,104, March 26, 1887:

"Committee on the defaulters' question, and Bro. Brown elected as assignee. Motion made and supported that each and every member, initiated before January 1, that his signature be received, and signed over to Bro. Brown, and let him put it through the court. Carried."

An assignment was drawn up in pursuance of said action of the assembly, and signed by 37 members. These are claimed by plaintiff to have been all the members in good standing at the time of the assignment.

The conflicting claims in the evidence were these:

1. The plaintiff claimed that the money paid in by the persons joining the preliminary organization known as the "Peninsular Car-works Assembly" was to go into the funds of the Local Assembly No. 8,104 of the Knights of

Labor. The defendants, on the other hand, claimed that the dollar paid in by each of the 530 men was contributed for the sole purpose of aiding the families of these men in distress, and was not to go into the local assembly. This dispute was settled by the jury in favor of the plaintiff by their answers to questions Nos. 1, 3, and 5, in which answers they found that the money paid in was intended by all the persons paying it in to go into the funds, and become the property, of the Local Assembly No. 8,104, which was by all of them intended to be a distinct organization from, and a successor to, the preliminary association.

2. The plaintiff claimed that all the members in good standing of the local assembly joined in the assignment to him, and that that was sufficient; and the defendants insisted that he must, in order to prevail, have an assignment from all the persons who contributed to the fund, which he did not have. The jury found that all the members "*interested* in the fund contributed" did not join in the assignment. They did not find specially how many members there were in good standing, or whether or not all the members of Local Assembly No. 8,104 in good standing joined in the assignment. The court held in his instructions to the jury that, under the rules of the Knights of Labor, all the money belonging to Local Assembly No. 8,104 was vested in those who were in good standing, and those not in good standing had no rights in this money; and he seemed to take it for granted that the evidence was conclusive that all the members in good standing, under the constitution and laws of the order, had joined in the assignment to plaintiff, and therefore only submitted to the jury the question of the intent of the parties who paid in the money as to where it was to go, and instructed them that they must find that *every*

74 MICH.—18.

*man* who paid in his dollar at the preliminary meeting paid it in with the understanding as to what the constitution and rules of the Knights of Labor called for as to the rights of members in the fund, and that the money was to go towards his initiation into the Knights of Labor, and that by paying this dollar he subscribed to the constitution and by-laws of this association of the Knights of Labor,—

> "Thus giving the members of this association the right to divest him of the interest in the dollar he had paid, by insisting upon the loss of his right to this dollar by failure to comply with the by-laws."

That they must find all this before they could return a verdict for the plaintiff. If they did so find, the plaintiff could recover.

If the circuit judge was correct in his submission of the case to the jury, we fail to see any such inconsistency between the general verdict and the answer to the second special question as would render the general verdict nugatory. The jury did not mean by this answer that all the members did not pay in their dollar with the intent that it should go into the local assembly of the Knights of Labor, and become the property of said assembly, to be controlled by their constitution and by-laws, because in answer to special questions Nos. 1, 3, and 5 they found specially to the contrary. Did they mean that all the members of the local assembly in good standing at the time the assignment was made did not join in the assignment? It is evident they did not. The judge correctly took it for granted from the evidence that all the members in good standing did join,—and there was really no testimony tending to show otherwise,—and did not submit that matter to them. If they did mean this, it can have no effect, because there is no evidence

in the record to support the special finding, if such is the sense of it. What was evidently meant by the jury in this answer was that all the persons originally contributing to the fund, and originally interested in it, did not join in the assignment. Of this there was no dispute; and the judge assumed it to be of no consequence, and we think he was right. In the light of the evidence in the case, the contention of the parties upon the trial, and the instructions of the court, and all the findings of the jury, both general and special, no other construction than the one last above can be put upon this answer to the second special question submitted.

The parties who originally joined the Local Assembly No. 8,104 might, in a certain sense, be said to be "interested" in the funds belonging to the assembly, because it is provided by the rules of the order that they can, at any time, by paying their arrearages of dues, resume their rights as members. This would re-invest them with the rights in the funds of the association, and in the moneys sought to be collected in this suit, but until they paid their dues, and while they were in arrears and suspended, they had no rights or legal interest in the moneys of the assembly. They had perhaps while suspended a contingent interest, depending upon their regaining their rights, but not such an interest as made them necessary parties to the assignment. The jury must have had reference to this contingent interest in their answer to the second question.

But the defendants claim that the judgment of the court is right, because, under all the evidence, the plaintiff was not entitled to recover, and the jury should have been so instructed in the first place. This claim is based upon the proposition that this voluntary unincorporated association, consisting of many members contributing to a fund for the joint benefit of all, is a copartnership, and

therefore the respective rights and duties of the members, with regard to their common property, can only be settled in a court of equity; that the rights of the individual members are entitled to as much respect in the courts as are the rights of any number of associates less than the whole; and it would be manifestly improper for the court to permit 37 members, out of any greater number, to recover for themselves that which belongs to all the members.[1]

This association was in no sense a copartnership. There was no business carried on by it, and nothing involving loss or profit in a business sense. *Burt v. Lathrop*, 52 Mich. 106 (17 N. W. Rep. 716). It was purely a benevolent and social organization, having also in view the protection, benefit, and welfare of its members in their various employments. It must now be considered as well settled that persons have a right to enter into such associations, and to bind themselves as to their membership and rights in such societies, and the funds of the same, by the constitution and by-laws of the association which they adopt, or subscribe to after adoption. Such an organization may be neither a partnership nor a corporation. The articles of agreement of such an association, whether called a "constitution," "charter," "by-laws," or any other name, constitute a contract between the members which the courts will enforce, if not immoral or contrary to public policy or the law of the land. *Hyde v. Woods*, 94 U. S. 523, 2 Sawy. 655; Bac. Ben. Soc. §§ 37, 91, and § 116, subd. 1; Austin Abbott's note to *Ebbinghousen v. Worth Club*, 4 Abb. N. C. 300, 301; Nibl. Mut. Ben. Soc. §§ 92, 93.

The only persons having control of these funds were the members in good standing in the local assembly, by

---

[1] Counsel cited, in support of this proposition, *Butterfield v. Beardsley*, 28 Mich. 412, 420, 421, and citations; *Mason v. Finch*, Id. 283.

the agreement of all the members, as shown by the constitution and by-laws of the Knights of Labor, which constitution and by-laws in this respect were known to all the members when they paid in their money, as found by the jury under the charge of the court. Not only did the assembly in regular lodge meeting vote this assignment to plaintiff, but, in pursuance of that vote, all the members of the assembly in good standing executed an assignment to plaintiff of their right, title, and interest in this money to plaintiff. He was thereby, under the law of the order and of the land, entitled to sue and recover the money in the hands of the defendants, if it belonged to the assembly, as the jury found it did. The defendants divided this money up between themselves and Heurion, relying upon difficulties and technicalities in the law as they supposed it to be to keep it. It is not to be regretted that they were mistaken in the law, and therefore deprived of the fruits of at least an attempted moral larceny.

The judgment of the court below will be reversed, and judgment will be entered in this Court for the plaintiff upon the general verdict for the amount thereof, and with interest from the date thereof. The plaintiff will recover costs of both courts.

The other Justices concurred.