(No. 5506.   November 10, 1930.)

IDAHO APPLE GROWERS' ASSOCIATION, v. E. N. BROWN, Respondent.

[293 Pac. 320.]

S. Ben Dunlap, for Appellant.

John C. Rice and W. A. Stone, for Respondent.

LEE, J.—In the summer and fall of 1923, certain growers of fruit and vegetables, including defendant and respondent, Brown, living in the vicinity of Caldwell, in order to obtain the advantages of a co-operative marketing of that year's fruit crop, determined to work in conjunction with one another in an effort to market each individual grower's fruit, it being agreed by and between said growers, including respondent, "that no grower should have any interest in any other grower's crop or the proceeds thereof, and that each grower should receive all the proceeds from the sale of his individual crops without division with any

other grower, and without liability for any losses or expenses sustained by other growers, and should, at his own expense, pay for all of the materials and supplies acquired by and used by him individually in preparing his individual crop for market and should also pay the expenses incident to the sale of his crop; that a sales committee should be appointed and authorized to negotiate for and to sell said 1923 crop and should be authorized to apportion the expenses of said committee, incident to the sale of said 1923 crop, such as rent, help, telephone, telegraph and all other expenses of said committee, among the respective growers, on an equitable basis and in proportion that each individual grower's crop bore to the entire crop handled by said committee for said growers."

Pursuant to this agreement, said growers, including respondent, "selected and appointed a sales committee and authorized" it to make contracts for the sale of their respective 1923 fruit crops and "to transact all business in connection with the marketing of said crops and to incur expenses incident to the marketing of said 1923 crop and to collect the proceeds of said sales and to do all things necessary, expedient or convenient to carry out said purposes."

On or about Oct. 15, 1923, respondent, in writing authorized and directed said sales committee to sell his said fruit crop and at the time agreed to reimburse and pay it for any cash advanced him by it and for all expenses incurred by it "in his behalf in selling said fruit and also to pay said committee for his proportionate share of the expenses of said committee in selling said 1923 crop for all of said growers, and also agreed to pay said committee for any merchandise supplied by it to him; that said defendant agreed to pay said committee in full for said items at Caldwell, Canyon County, Idaho."

Thereafter, respondent delivered to said committee for sale a part of his crop; and said committee, in pursuance of the agreement aforesaid, did sell the same, after having furnished respondent certain materials and supplies used by him in packing his crop, and after paying inspection,

loading and packing charges besides advancing him some cash: the materials and supplies were furnished at an agreed price, the actual cost value. These charges together with respondent's *pro rata* share of the committee's actual expenses incident to marketing the crops of all the growers totaled the sum of $670.80, of which respondent paid all but $159.48.

Subsequently, with respondent's consent, after due notice, the committee authorized to that end assigned this claim to plaintiff and appellant. Suit for the balance was begun in the probate court of Canyon county, and appellant secured a judgment in its favor. On appeal to the district court a general demurrer to the complaint was sustained, an amended complaint went the same way, and judgment of dismissal was entered; hence this appeal.

Appellant's position is that its action is one in contract, a clear-cut, mutual agreement between the growers, the terms of which any one of them could enforce against the others. Respondent contends that the combined agreements created a voluntary, unincorporated association for business purposes that could not sue any one of its members for any matter connected with or part of the association's business, the sole remedy being that of an equitable accounting.

As the writer understands it, the necessity of accounting arises only where the interests of individuals associated for business purposes are so interlocked that cross-demands may arise between the individual and the group, affecting the common assets or liabilities. Is such a situation presented here? A careful reference to the growers' agreement discloses only one instance in which any individual grower could have had a participating interest in the outcome of the scheme projected. Each grower agreed that he would pay his *pro rata* share of the expense incurred by the committee. In the event that some of the growers became insolvent, the remainder of course would have had to bear the burden, not by reason of any partnership relation but by reason of the mutual contract directly entered into by each of them. It does not appear that the

group as such owned any property or other assets. Since the committee entrusted by the group to conduct the business had funds with which to function, it may not improperly be assumed that this money was borrowed on the credit of the group or contributed as loans by certain members thereof. And, if each grower paid his *pro rata* share of the general expense, the borrowed money would have all been repaid and the group as represented by its committee been left with no assets to account for.

It will not do to argue that the individual grower would have been required to demand an accounting in order to secure the money received by the committee for his fruit crop. That money was his, no part of the assets of the group, but was held by the group's committee as trustee. Had there been any dispute between the grower and the committee as to the actual sum due for the fruit crop, the grower would have been relegated to a direct suit on his contract made at the time he delivered his crop, and could have proved the sum for which it was sold either by cross-examination under the statute or by demanding and introducing the committee's contract with the vendee. The group had no interest in the *res* whatever,—simply the right to deduct from its proceeds whatever items the grower had agreed should be deducted. Suppose a dozen ranchers had agreed that three of their number should take a train load of the individually owned beeves to the Chicago market and dispose of them there, with the understanding that each rancher should pay the three his *pro rata* of the expenses incurred. Disposal having been effected, and Rancher Jones having refused to pay his part, what would remain but a straight suit against the delinquent, a suit founded on contract?

A voluntary association has no separate entity, and can neither hold nor assign property: the title to such property is vested jointly in the individual members who control, manage and dispose of it at their joint pleasure. (5 C. J. 1359, par. 86.) And, where one member having undertaken to pay his *pro rata* part of the expense in-

cident to the attainment of the common object defaults, the other members may sue him direct. (5 C. J. 1374, par. 134.)

In the case at bar, the other growers had a straight claim against respondent. Through their committee, they assigned this claim to appellant, as they had a right to do. Appellant stood in their shoes; and, if respondent had any reason for disputing or questioning the claim, he should have set it up by answer: his rights were exclusively governed by the mutual contract or contracts he had made with his fellows.

Particularly interesting in this connection are *Troy Iron & Nail Factory v. Corning,* 45 Barb. (N. Y.) 231, *Ray v. Powers,* 134 Mass. 22, *Davis v. Skinner,* 58 Wis. 638, 46 Am. Rep. 665, 17 N. W. 427, *Robbins Co. v. Cook,* 42 S. D. 136, 7 A. L. R. 218, 173 N. W. 445, *Simpson v. Ritchie,* 110 Me. 299, 86 Atl. 124, and *Boston Baseball Assn. v. Brooklyn Baseball Club,* 37 Misc. Rep. 521, 75 N. Y. Supp. 1076. Respondent's demurrer should have been overruled.

Judgment reversed and the cause remanded; costs to appellant.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.