VENUS LODGE NO. 62, F. & A. M., AND PRINCE HALL GRAND LODGE, F. & A. M., v. ACME BENEVOLENT ASSOCIATION, INC.

(Filed 8 March, 1950.)

**1. Associations § 4—**

Where the parent organization imposes no restraint on the alienation of property by the local association, but its sole interest in the property of the local association is that such property should vest in it in the event of the dissolution of the local association, such parent organization has no standing to question the validity of a conveyance of property by the local association, the local association never having been dissolved.

**2. Associations § 1—**

An unincorporated association is a body of individuals acting together for some common enterprise by methods and forms used by incorporated bodies, but without a corporate charter.

**3. Same—**

At common law an unincorporated association has no legal entity and cannot contract, or take, hold or transfer property, or sue and be sued.

**4. Associations § 4—**

A conveyance to an unincorporated association is not void at common law, but vests the title to the property conveyed in the members of the association as individuals.

**5. Same—**

At common law, a conveyance of property to trustees for the benefit of an unincorporated association vests the legal title in the trustees who hold the same in trust for the individuals composing the association.

**6. Same—**

Where property is conveyed to trustees for the benefit of an unincorporated association, the members of the association, acting unanimously, have the right to cause the trustees to convey the property to a person designated by them, even though the conveyance is not calculated to promote the objectives of the association.

**7. Torts § 1—**

The execution of a legal right cannot become illegal merely because its execution is prompted by a mischievous motive.

**8. Associations § 4: Trusts § 20c—**

Where property is conveyed to trustees for the benefit of an unincorporated association, the conveyance of the property by the trustees to a designated person by the unanimous direction of the members of the association, is effective and cannot subsequently be challenged by the association, even if it later acquires the capacity to sue in its own name, nor by persons joining the association thereafter, since such persons never acquired any rights in the property. The transactions constituting the basis of this action occurred prior to the effective date of G.S. 39, Art. 4, and G.S. 1-97 (6).

APPEAL by plaintiffs from *Nettles, J.,* at September Term, 1949, of BUNCOMBE.

The plaintiffs sued to establish and enforce a constructive trust in realty and for an accounting for rents of the same on the theory that they had been deprived of such realty or of some interest therein by fraud of the defendant. When the testimony offered by the plaintiffs on the trial in the court below is accepted as truth, it directly or inferentially establishes the facts set out in the next eight paragraphs.

The plaintiff, Prince Hall Grand Lodge, is a corporation hereinafter called the Grand Lodge. It constitutes the supreme governing body of Free and Accepted Masons, a fraternal society having various subordinate lodges into which members are received in accordance with prescribed ritualistic ceremonies. These subordinate lodges possess distinct

property rights of their own; but the code of the Grand Lodge provides that "in the case of suspension or demise of any lodge, the property and furniture reverts to the Grand Lodge." On 21 July, 1936, the plaintiff, Venus Lodge No. 62, which is an unincorporated association and a subordiate lodge of Free and Accepted Masons, bought the premises in suit, and took title to them in the name of five of its members as trustees for its benefit.

The premises in controversy are situated on Market Street in Asheville, North Carolina, and consist of lands containing a three-storied business building. From 21 July, 1936, until 16 September, 1937, Venus Lodge used the third floor rent-free as a lodge room, and leased the remainder of the building to others.

In 1937, the officers and members of Venus Lodge became fearful that Venus Lodge was about to become inoperative, and that the premises in suit would be forfeited to the Grand Lodge under its code.

To forestall this contingency, they convened Venus Lodge in regular meeting, and then and there directed that the defendant corporation be formed, and that the trustees of the lodge convey the premises in controversy to it in fee simple. On 8 September, 1937, six of the members of Venus Lodge, acting as incorporators, organized the defendant, Acme Benevolent Association, Inc., as a corporation under the laws of North Carolina, and on 16 September, 1937, the trustees of Venus Lodge signed, sealed, acknowledged, and delivered to the defendant a deed sufficient in form to vest the premises in controversy in the defendant in fee simple.

All of the then members of Venus Lodge were admitted to membership in the defendant, Acme Benevolent Association, Inc., which was formed "to assist and give aid and comfort to such people which in the opinion of the corporation shall be deemed worthy of the same." Although the deed recited that the grantors had received "ten dollars and other valuable considerations," the conveyance was without consideration, and was designed to prevent the Grand Lodge from taking the property, which was worth at least $10,000.00, in case Venus Lodge became inoperative.

All contemporary members of Venus Lodge authorized the transfer of the property to the defendant, and had notice of all the facts surrounding the transaction. Brief contemporaneous memoranda of the conveyance were noted in the minutes of the lodge, and soon thereafter, to wit, on 19 November, 1937, the deed of the trustees to the defendant was registered in the office of the Register of Deeds of Buncombe County.

Upon delivery of the deed, *i.e.,* on 16 September, 1937, the defendant assumed control of the premises. From that time down to 14 September, 1948, when this litigation was commenced, the defendant claimed title to the property in controversy under its deed, and manifested such claim by leasing the various portions of the building to sundry tenants and by

using the accruing rents for its own purposes. The property was not returned for taxation, however, because of the belief of the defendant that it was exempt from taxation as the property of a charitable association.

Despite the forebodings of 1937, Venus Lodge did not become inoperative. On the contrary, it has continued to function as a subordinate lodge of Free and Accepted Masons, and to occupy the third floor of the building in controversy as its lodge room. It paid the defendant a monthly rental, however, for the use of such lodge room from 16 September, 1937, until 1948. At the time last mentioned, persons initiated into Venus Lodge during 1943 and subsequent years took charge of the lodge, which thereupon ceased to pay further rent to the defendant and joined the Grand Lodge in this action for the avowed purpose of establishing and enforcing a constructive trust and securing an accounting for the rents received by the defendant. The Grand Lodge and the persons who were acting as officers of Venus Lodge during 1948 did not acquire actual knowledge of the conveyance of 16 September, 1937, and the circumstances surrounding it until shortly before 14 September, 1948, when this action was begun.

When the plaintiffs had introduced their evidence and rested their case, the defendant moved the court to dismiss the action upon a compulsory nonsuit under G.S. 1-183. The trial court allowed the motion and entered judgment accordingly, expressly asserting that it did so because the testimony of the plaintiffs had disclosed that the cause of action asserted by them was barred by the lapses of time prescribed by G.S. 1-38 and G.S. 1-52 (9), which were affirmatively pleaded by the defendant. The plaintiffs excepted to the judgment and appealed, assigning errors.

*James S. Howell and Oscar Stanton for plaintiffs, appellants.*
*J. A. Patla, Burgin Pennell, and J. M. Horner for defendant, appellee.*

ERVIN, J. The chief inquiry presented by the appeal is whether the evidence of the plaintiffs is legally sufficient to take the case to the jury and to support a verdict in their favor. *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316.

Since the code of the Grand Lodge did not undertake to impose any restraint upon the alienability of the property of Venus Lodge or its members so long as Venus Lodge was an active subordinate lodge, and since there has never been any "suspension or demise" of Venus Lodge, the Grand Lodge has never had any semblance of claim to the property in suit, and is without standing to question the validity of the conveyance to the defendant. It follows that its action was properly dismissed upon a

compulsory nonsuit. In consequence, there is no occasion for the expression of any opinion on our part as to the legality of the provision of the code specifying that the property of a subordinate lodge vests in the Grand Lodge "in the case of suspension or demise" of the subordinate lodge. Divergent authorities relating to this problem have been collected in these annotations: 94 A.L.R. 646; 15 L.R.A. (N.S.) 336; 2 L.R.A. 841; 12 Ann. Cas. 873.

This brings us to the question of the propriety of the compulsory nonsuit as to the plaintiff, Venus Lodge. This phase of the litigation becomes much simplified if the judicial gaze is focused on the all-important fact that Venus Lodge was an unincorporated association when the transactions under scrutiny were consummated. At that time the rules of the common law relating to such associations had not been modified in North Carolina except in respect to religious bodies and organizations issuing certificates or policies of insurance.

An unincorporated association is merely a body of individuals acting together, without a corporate charter, but upon the methods and forms used by incorporated bodies, for the prosecution of some common enterprise. *Hecht v. Malley,* 265 U.S. 144, 44 S. Ct. 462, 68 L. Ed. 949. At common law such an association is not an entity, and has no existence independent of its members. *Tucker v. Eatough,* 186 N.C. 505, 120 S.E. 57; *Nelson v. Relief Department,* 147 N.C. 103, 60 S.E. 724. This being true, an unincorporated association has no capacity at common law to contract, *Nelson v. Relief Department, supra;* or to take, hold, or transfer property, 7 C.J.S., Associations, section 14; or to sue or be sued. *Hallman v. Union,* 219 N.C. 798, 15 S.E. 2d 361; *Citizens Co. v. Typographical Union,* 187 N.C. 42, 121 S.E. 31; *Tucker v. Eatough, supra; Nelson v. Relief Department, supra.*

Notwithstanding these principles, a conveyance to an unincorporated association is not void at common law in this jurisdiction. Since it looks at substance rather than form the common law construes such a conveyance to be a grant to the members of the association, and adjudges that it vests the title to the property embraced by the conveyance in such members as individuals. *Robinson v. Daughtry,* 171 N.C. 200, 88 S.E. 252, Ann. Cas. 1918E, 1186; *Daniels v. R. R.,* 158 N.C. 418, 74 S.E. 331; *Walker v. Miller,* 139 N.C. 448, 52 S.E. 125, 1 L.R.A. (N.S.) 157, 111 Am. St. Rep. 805; *Simmons v. Allison,* 118 N.C. 763, 24 S.E. 716; *Murray v. Blackledge,* 71 N.C. 492. See, also, in this connection: *Byam v. Bickford,* 140 Mass. 31, 2 N.E. 687; *Beaman v. Whitney,* 20 Me. 413. Moreover, it is well settled that a conveyance may be made to trustees for the benefit of an unincorporated association, and that in such case the legal title vests in the trustees, who hold the same in trust for the persons composing the association. 7 C.J.S., Associations, section 14.

The task of applying these principles to the testimony must now be performed. When Venus Lodge purchased the premises in controversy, the trustees took legal title to the same; but they held that title in trust for the individuals having membership in the Lodge under the common law rule that property ostensibly acquired or held by an unincorporated association belongs jointly to its members, who have the right to manage, control, and dispose of such property at their joint pleasure. 4 Am. Jur., Associations, and Clubs, section 35; 7 C.J.S., Associations, section 27; *Idaho Apple Growers Ass'n v. Brown,* 50 Idaho 34, 293 P. 320; *Ahlendorf v. Barkons,* 20 Ind. App. 656, 50 N.E. 886; *Dake v. Fuller,* 9 N.H. 536, 32 Am. D. 392; *Branagan v. Buckman,* 122 N.Y.S. 610, 67 Misc. 242; *Parks v. Knickerbocker, Trust Co.,* 122 N.Y.S. 521, 137 App. Div. 719; *U. S. Royalty Ass'n v. Stiles* (Tex. Civ. App.), 131 S.W. 2d 1060.

Inasmuch as they acted unanimously, the members of Venus Lodge had a clear legal right to cause the trustees to convey the premises to the defendant, even though the conveyance was not calculated to promote the objects of the Lodge. 7 C.J.S., Associations, section 14. When all is said, they were merely doing as they pleased with their own. *Hope of Alabama Lodge of Odd Fellows v. Chambless,* 212 Ala. 444, 103 So. 54; *Brown v. Stoerkel,* 74 Mich. 269, 41 N.W. 921, 3 L.R.A. 430; *Pullis v. Robinson,* 73 Mo. 199. As the deed of the trustees to the defendant was made in the exercise of an undoubted legal right belonging to the contemporary members of Venus Lodge, it did not become illegal merely because its execution was prompted by a mischievous motive on their part. "While mischievous motives may make a bad case worse, they cannot make that wrong which in its own essence is lawful." *In re Sharpe's Land,* 230 N.C. 412, 53 S.E. 2d 302.

Certainly Venus Lodge has no cause of action against the defendant in its own right as an association even if it be taken for granted that it has acquired the capacity to sue in its own name under statutes enacted subsequent to the occurrences resulting in this litigation. When these events took place, Venus Lodge was, in the eye of the law, an "airy nothing." *Nelson v. Relief Department, supra.* A cause of action cannot arise to a nonexistent legal ghost having no capacity to enjoy legal rights or to suffer legal wrongs. The suggestion that Venus Lodge can maintain the action for the benefit of persons who were initiated into membership in it after the execution of the deed to the defendant is without merit. These persons have no legal or equitable rights of their own in the property. Moreover, they cannot claim any such rights as successors of Venus Lodge, or of the individuals who were members of it when the deed was made; for Venus Lodge, as an unincorporated association, never had any rights in the property, and all of its contemporary

members participated in the making of the conveyance.  65 C.J., Trusts, section 886.

What has been said compels the conclusion that the defendants acquired complete title to the premises in controversy under the deed of 16 September, 1937.  For this reason, we refrain from any observations upon the several statutes of limitation invoked by the defendant.

Although no occasion arises on the present record for us to express any opinion as to how far they have altered the common law rules relating to unincorporated associations, we deem it proper to call the attention of the bench and bar to certain statutes enacted subsequent to the events giving rise to this action.  Chapter 133 of the Public Laws of 1939, which is now codified as Article 4 of Chapter 39 of the General Statutes, provides that "voluntary organizations and associations of individuals organized for charitable, fraternal, religious, or patriotic purposes" may acquire, hold, and convey real estate "in their common or corporate names."  Chapter 478 of the 1943 Session Laws, which is now embodied in G.S. 1-97 (6), prescribes a method for serving process upon "any unincorporated association or organization" and declares that "any judgment recovered in any action commenced by service of process, as provided in this subsection, shall be valid and may be collected out of any real or personal property belonging to the association or organization."  A thoughtful note in the North Carolina Law Review suggests that the last cited statute must be interpreted to render all unincorporated associations capable of suing or being sued in their own names in North Carolina courts.  25 N.C.L.R. 319.

The judgment dismissing the action upon a compulsory nonsuit is
Affirmed.