**ROCK CREEK GARDENS TENANTS ASSOCIATION, Appellant,**

v.

**A. M. and L. A. FERGUSON, Trustees, et al., Appellees.**

No. 14035.

District of Columbia Court of Appeals.

Argued June 19, 1979.

Decided Aug. 7, 1979.

Elkanah J. Burns, Washington, D. C., with whom William Walsh, Washington, D. C., was on the brief for appellant.

John G. Carleton, Richard W. Luchs, Washington, D. C., with whom Ward H. Oehmann, Richard A. Hauser, and Susan R. Goodman, Washington, D. C., were on the briefs for appellees.

Before NEWMAN, Chief Judge, and HARRIS and FERREN, Associate Judges.

**PER CURIAM:**

Appellant, a voluntary unincorporated association of tenants, seeks reversal of the trial court's dismissal of its complaint. The question presented to us on appeal is one of first impression in this court. The issue is whether a voluntary unincorporated association has the legal capacity to hold title to real estate within the meaning of § 602(b) of the Rental Housing Act of 1977.[1] Finding that appellant does not have such legal capacity, we affirm.

Rock Creek Gardens, an apartment complex at 2511 Q Street, N.W., Washington, D. C., was owned, at the relevant time of this suit, by A. M. and L. A. Ferguson, Trustees (owners). A substantial majority of tenants of the Rock Creek Gardens had joined together in April 1977, to form the Rock Creek Gardens Tenants Association, a voluntary unincorporated association, representing the member-tenants in dealing with the owners and the property manager, Weaver Brothers, Inc.

In June 1978, a contract was entered into between the owners and Robert A. Podrog, for sale of the complex, and the appellant was notified of this contract in September 1978.[2] Appellant contends now, as it did in the trial court, that under § 602(b) of the Rental Housing Act of 1977, appellant had a statutory right of first refusal to purchase the complex.

Section 602(b) of the Rental Housing Act of 1977 in pertinent part provides that:

A landlord of a housing accommodation comprised of two (2) or more rental units may sell it to a purchaser but only after the landlord has done the following:

. . . . .

(b) In the case of a housing accommodation comprised of more than four (4) rental units, and which has an organization of tenants with the legal capacity to hold real estate, who have previously indicated an interest in purchasing the housing ac-

---

1. D.C. Law 2–54, 24 D.C. Reg. 5334, 5396 (Dec. 30, 1977) (effective Mar. 16, 1978).

2. We note that appellant, subsequent to the relevant time of this suit, has incorporated.

commodation, gives the tenants an opportunity to purchase the housing accommodation at a price which represents a bona fide offer of sale.[3]

Thus, the landlord who desires to sell his property has an obligation to offer the property first to the tenants organization if (1) the housing accommodation is comprised of more than four rental units; (2) the tenants organization has "the legal capacity to hold real estate"; and (3) the tenants organization has previously indicated an interest in purchasing the housing accommodation. It is on the second of these requirements that we focus.

A voluntary unincorporated association may be nothing more than individuals joining together based merely on common purpose or interest. *See Hecht v. Malley*, 265 U.S. 144, 157, 44 S.Ct. 462, 68 L.Ed. 949 (1924). Thus, it is a maxim of the common law that, in the absence of statutory authority, such an association has no legal existence independent of those members who comprise the organization. *Venus Lodge No. 62 v. Acme Benevolent Ass'n*, 231 N.C. 522, 526, 58 S.E.2d 109, 112 (1950); Annot., 15 A.L.R.2d 1451 (1951). Such being the case, the association at common law cannot, in its own name, (1) enter into contracts, *Lamm v. Stoen*, 226 Iowa 622, 626, 284 N.W. 465, 467 (1939); (2) take, hold, or transfer property, *Arnold v. Methodist Episcopal Church South*, 281 Ala. 297, 300, 202 So.2d 83, 84–85 (1967); *North Little Rock Hunting Club v. Toon*, 259 Ark. 784, 793, 536 S.W.2d 709, 713–14 (1976); *Libby v. Perry*, 311 A.2d 527, 531–32 (Me. 1973); *Johnson v. South Blue Hill Cemetery Ass'n*, 221 A.2d 280, 284 (Me.1966); *In re Estate of Anderson*, 571 P.2d 880, 882 (Okl. App.1977); or (3) sue or be sued, *United Mine Workers v. Coronado Coal Co.*, 259

U.S. 344, 385, 42 S.Ct. 570, 66 L.Ed. 975 (1922) (court recognized the common law rule, but held that a labor union such as the U.M.W. could be sued in federal court). This common law rule, though not found in the case law of this jurisdiction, has not been abrogated by statute in the District of Columbia.[4]

In other jurisdictions, in the absence of statutory authority that grants legal status to such an organization, courts have fashioned remedies in certain circumstances that avoid the harsh consequences of the strict application of the common law rule— the voiding of contracts, deeds, gifts, etc. For example, in disputes over real property, one ameliorative approach is to construe the deed to the association as vesting ownership in the individual members. *County of Trinity v. Rourke*, 275 Cal.App.2d 628, 79 Cal. Rptr. 902 (1969). Another such approach is to ascertain the intent of the donee and appoint a trustee to hold legal title for the use and benefit of the association. *In re Estate of Anderson, supra* (court found that the organization was an unincorporated charitable association and set up a trust in accord with the general philosophy of the *cy pres* doctrine); *Johnson v. South Blue Hill Cemetery Ass'n, supra* (devise created a charitable trust); Annot., 15 A.L.R.2d at 1452–53 and cases cited therein.

Appellant, although accepting the common law rule and acknowledging that the rule has not been abrogated by statute in this jurisdiction, invites this court to recognize that such a tenants organization has legal capacity to hold title to land within the meaning of § 602(b), through either the trust arrangement or through individual ownership as tenants in common. We decline appellant's invitation.

**3.** On September 19, 1978, the City Council passed the Emergency Multi-Family Rental Housing Purchase Act of 1978, D.C. Act 2–277, 25 D.C. Reg. 3419 (Oct. 20, 1978), which amends § 602(b) and affords tenants 30 days after notification of intention to sell to form an association pursuant to § 602(b). This amendment has no bearing on a contract entered into before the effective date of the corrective legislation.

**4.** D.C. Code 1973, §§ 29–601 to –606, dealing with charitable, educational, and religious associations, require the filing of a certificate with the Recorder of Deeds for such an organization to attain legal status, and D.C. Code 1973, §§ 29–801 to –847 set out the requirements for incorporation of cooperative associations. Neither statute applies to types of associations such as appellant.

**974**

As previously stated § 602(b) explicitly states that the housing accommodation must have "an organization of tenants with the legal capacity to hold real estate." The words themselves belie appellant's argument. The section gives an appropriate tenants *organization* the right to purchase the property and does not give the right to individual tenants. If the council had meant to allow the individuals to buy the complex as tenants in common, it would not have required the prerequisite of an organization with the legal capacity to hold real estate. Moreover, the section requires the organization to have *legal* capacity to hold real estate. The Council, in using these words, could not have envisioned the trust mechanism where the legal capacity to hold

real estate would be in a third party trustee.[5]

The myriad of legal issues which would result from a holding by this court that a voluntary unincorporated association has legal capacity to hold title to land, *e. g.*, what is the individual liability of members of such an association, lead us to conclude that if the common law rule is to be abrogated, it should be by legislation, not by this court.

*Affirmed.*

5. We find further support for our position from D.C. Rental Accommodations Commission Emergency Regulation 600(e), 25 D.C. Reg. 731–32 (July 21, 1978), which defined "legal capacity."

> Legal capacity to hold real property may be evidenced as follows: (1) if the organization of tenants is a corporation . . . ; (2) if the organization is a partnership . . . ; (3) if the organization is a limited partnership . . . ; or (4) if the organization is a legal entity other than a corporation or a general

or limited partnership, by an opinion of counsel that the organization has the capacity to hold real property together with a statement of the basis for such opinion.

Though subsequent to the contract in question and not controlling on the issue before us, this amendment confirms the common understanding of "legal capacity." Appellant fits none of these categories and still would not be, if formed now as an unincorporated association, an appropriate organization for purposes of § 602(b).