## CHEROKEE HOME DEMONSTRATION CLUB v. OXENDINE

[100 N.C. App. 622 (1990)]

CHEROKEE HOME DEMONSTRATION CLUB, PLAINTIFF v. MABLE OXENDINE, ORIGINAL DEFENDANT, AND RUTH OXENDINE, VILER J. CHAVIS, FANCY J. LOCKLEAR, PARREE C. JACOBS, GEORGIA LOCKLEAR, CATHERINE CHAVIS, LILLIE MAE WOODS, BERNICE LOCKLEAR, JESSIE B. CHAVIS, PATTIE CHAVIS, AND MYRTLE LOCKLEAR, ADDITIONAL PARTIES DEFENDANT, AND RUTH OXENDINE, MABLE OXENDINE, VILER J. CHAVIS, FANCY J. LOCKLEAR, PARREE C. JACOBS, GEORGIA LOCKLEAR, CATHERINE CHAVIS, LILLIE MAE WOODS, BERNICE LOCKLEAR, JESSIE B. CHAVIS, PATTIE CHAVIS, AND MYRTLE LOCKLEAR, THIRD PARTIES PLAINTIFF v. MAUDE LOCKLEAR, LOU ELLEN LOWERY, DOVIE SCOTT, ROY EVERETT, LEONARD LOCKLEAR, LULA BRYANT, MAE BRYANT, AND SHEILA LOWERY, ASSOCIATED UNDER THE NAME OF CHEROKEE HOME DEMONSTRATION CLUB, THIRD PARTIES DEFENDANT

No. 9016DC145

(Filed 20 November 1990)

**1. Associations and Clubs §§ 24, 27 (NCI4th)— unincorporated civic organization—title to real property—right to sue in own name—registration**

While N.C.G.S. § 39-24 permits an unincorporated civic association to hold real property in its common name, the association must be registered in accordance with N.C.G.S. § 66-68 and must allege such registration in order to bring a suit concerning such property in its own name. N.C.G.S. § 1-69.1.

**Am Jur 2d, Associations and Clubs §§ 11, 13.**

**Power and capacity of members of unincorporated association, lodge, society, or club to convey, transfer, or encumber association property. 15 ALR2d 1451.**

**2. Associations and Clubs § 16 (NCI4th)— home demonstration club—unincorporated association—readmittance to membership—failure to state claim**

The counterclaim and complaint of defendants and third party plaintiffs were insufficient to show that they are entitled to readmittance to membership in plaintiff home demonstration club under a provision of the handbook of the North Carolina Extension Homemaker Association, Inc. stating that membership in that organization will not be denied on the basis of "color, race, or creed" where the club has no constitution, bylaws, rules or other provisions controlling its membership; the fact that club members in the past loosely adhered

to guidelines of the State organization was insufficient to show that the club was under the auspices of that organization; and defendants and third party plaintiffs do not contend that they were denied membership based upon any ethnic, religious or racial practices of the club.

**Am Jur 2d, Associations and Clubs §§ 19, 41.**

APPEAL by defendant Mable Oxendine, additional parties defendant and third parties plaintiff (hereinafter referred to as "Group I") from an order dismissing their claims on 2 October 1989 by *Judge R. Frank Floyd, Jr.* in District Court, ROBESON County. Plaintiff and third party defendants (hereinafter referred to as "Group II") cross-appeal dismissal of their complaint. Heard in the Court of Appeals 18 September 1990.

Plaintiff, Cherokee Home Demonstration Club ("the Club") was at all relevant times in this action an unincorporated civic organization located in Robeson County, North Carolina. In 1962, the plaintiff club was allegedly deeded .12 acres of land by Deed of Gift from Ruth Oxendine, Conrad Oxendine and Redell Oxendine. The original members of the Club erected a clubhouse on the property. The clubhouse was used for approximately fifteen years for Club activities and fellowship dinners.

The organization was never incorporated, and its name, officers, and process agent were never registered in the Office of the Clerk of Superior Court of Robeson County. Insofar as the record shows, the Club had no rules, regulations, bylaws, or membership cards. Instead, the members apparently followed the guidelines of the North Carolina Extension Homemakers Association, Inc., a state organization administered through the offices of North Carolina County Agents.

At some point, Group I alleges that "because of the dictatorial, high-handed and imperious manner with which Maude Locklear and others [Group II] controlled the meetings, [Group I] attended the meetings with less frequency, but always continued their interest as homemakers."

As fewer of the members attended meetings, Group II decided to rotate meetings in their homes. They decided to lease the clubhouse for seven years to the Lumbee Regional Development Association as a day-care center.

In 1986-1987, Group I renewed membership in the North Carolina Extension Homemakers Association, Inc., and they all applied for readmission to the Club; however, their applications were denied by Group II.

In September 1987, the Lumbee Regional Development Association terminated its lease.

In October 1987, Mable Oxendine [Group I] obtained food for distribution to needy families in Robeson County. She stored the food at the clubhouse and also changed the locks on the doors, forwarding a key to Maude Locklear [Group II].

On 13 January 1988 the Cherokee Home Demonstration Club [Group II] filed suit against Mable Oxendine and Group I alleging, *inter alia*, that "Mable Oxendine did go on, without legal authority or justification, the premises belonging to Cherokee Home Demonstration Club." The plaintiff further alleged that Mable Oxendine had no legal authority to change the locks on the clubhouse and that she "interfered with the business contract of [the Club] by forcing the renter of the building to vacate the premises." Group II sued Mable Oxendine for trespass, unlawful interference with business contract, unlawful conversion of real property, and it further requested an order commanding the return of the premises and enjoining the defendant from "interfer[ing] with the Plaintiff or any of its civic functions."

The January 1988 action was joined with another action by Group I against Maude Locklear and Lou Ellen Lowery filed in September 1987 in Superior Court. The 1987 action was transferred to District Court on 18 April 1988.

On 8 November 1988, Mable Oxendine filed an amended answer, joining necessary additional parties defendants and asserted a counterclaim along with third party plaintiffs' complaint. The counterclaim and third party complaint alleged *inter alia* that the monies collected by Group II from the Lumbee River Development Association, amounting to approximately $30,600, was

> used as the membership desired, partially defraying the expenses of one member on a trip to the Holy Land, gifts to various fire departments, various funerals and charitable purposes, paying off the indebtedness of the building which those who borrowed were never required personally to pay, and continuing to rent the building to LRDA until the lease for

the same expired in October 1987. . . . That Maude Locklear and Lou Ellen Lowery hold more than $12,100.00 . . . of funds belonging to the [Club] . . . That Maude Locklear and Lou Ellen Lowery and other third parties defendants used more than $12,500.00 of the members of the [Club] named as third parties plaintiffs and third parties defendants [Group II], paying all of the expenses of their suppers, personal meetings, and any other purpose which they individually desired. . . .

Group I seeks damages for failure to admit them as members to the Club, a declaratory judgment that all of Group I are entitled to be declared members of the Club, a preliminary injunction to restrain each of the third party defendants from further interfering with the Group I memberships in the Club, a "declaration" by the court that all of Group I are entitled to free use and enjoyment of the clubhouse building, and a "decree" by the court that third party plaintiffs are entitled to hold free elections as provided for by the North Carolina Extension Homemakers Association, Inc.

Group I and Group II both made motions to dismiss. On 18 October 1989, Judge Floyd dismissed both complaints. Plaintiff Club and third parties defendants [Group II], and Mable Oxendine, all additional parties defendants and all third parties plaintiffs [Group I] appeal.

*Donald W. Bullard for plaintiff, third party defendants. (Group II).*

*Britt and Britt, by Evander M. Britt, Sr. and William S. Britt, for Mable Oxendine and additional parties defendant/third party plaintiffs. (Group I).*

LEWIS, Judge.

I. Dismissal of Plaintiff Club's Complaint

[1] Group II contends that their complaint was improperly dismissed by the trial judge. Their complaint was dismissed because plaintiff Home Demonstration Club allegedly does not have capacity to sue in its own name. An unincorporated association may sue in its own name, without naming any of the individual members composing it, but only if the association alleges in its complaint the "specific location of the recordation required by G.S. 66-68." G.S. § 1-69.1. G.S. § 66-68 requires an association to file a certificate in the office of the register of deeds in the county where the association does

business, showing the name of the association, the name of the owner or agent, and the addresses of each. Group II acknowledges this requirement, but distinguishes this situation on the grounds that it can sue and be sued in its own name regarding real property held by the Club pursuant to G.S. § 39-24.

G.S. § 39-24 provides:

> [v]oluntary organizations and associations of individuals organized for charitable, fraternal, religious, social or patriotic purposes, when organized for the purposes which are not prohibited by law, are hereby authorized and empowered to acquire real estate and to hold the same in their common or corporate names and may sue and be sued in their common or corporate names concerning real estate so held. . . .

Group I challenges the Club's capacity to sue and cites us to the case of *Highlands Township Taxpayers Assoc. v. Highlands Township Taxpayers Assoc., Inc.*, 62 N.C. App. 537, 303 S.E.2d 234 (1983), as controlling. In *Highlands Township*, this Court found that the failure of plaintiff unincorporated association to comply with the directives of G.S. § 1-69.1 was fatal to its complaint. "[B]efore an unincorporated association may gain the privilege of instituting a lawsuit in its common name, first there must be recordation of the necessary information required by G.S. 66-68 and the allegation of its specific location." *Id.* at 539, 303 S.E.2d at 236. The court upheld dismissal. The *Highlands* court was faced with a conflict between the recordation requirements of G.S. § 1-69.1 and G.S. § 66-71, which stated that failure to record as required by G.S. § 1-69.1 was a misdemeanor, but that "this Article does not prevent a recovery by such person in any civil action brought in any of the courts of this State." The court found that G.S. § 1-69.1 controlled the action, applying rules of statutory construction which are dispositive of the present issue.

G.S. § 39-24 was enacted in 1939. The amendment to G.S. § 1-69.1, which added the requirement of an allegation of G.S. § 66-68 recordation before suit may be brought by an unincorporated association in its common name, was enacted effective 1 October 1975. In the face of any irreconcilable conflict between the provisions of these two statutes, G.S. § 1-69.1, being the later enactment, will control or be regarded as a qualification of the earlier statute. *Id.; see also State v. Hutson*, 10 N.C. App. 653, 657, 179 S.E.2d 858, 861 (1971). The requirements of G.S. § 1-69.1

are mandatory and failure to satisfy them is not exonerated by G.S. § 39-24. *Highlands, supra,* at 540, 303 S.E.2d 234, 236. The trial court was correct in dismissing plaintiff's complaint.

## II. Dismissal of Group I's Counterclaim/Third-Party Complaint

Group I appeals the dismissal of their counterclaim/third-party complaint. Group II's motion to dismiss was granted based upon G.S. § 1A-1, Rule 12(b)(6), failure to state a claim upon which relief can be granted.

[2] Group I first seems to argue that the trial court erred in dismissing their complaint because they were denied readmittance to the Club based upon some language in the North Carolina Extension Homemaker Association, Inc.'s handbook which states that membership in that organization will not be denied based upon "color, race, or creed." Group I argues that this creed entitles *any* person who applies for membership to be admitted in plaintiff club. We disagree. The plaintiff has no constitution, by-laws, rules or other governing provisions which control their membership. They have not adopted any other creed or constitution as their own. The fact that its members in the past have loosely adhered to the guidelines of the North Carolina Extension Homemaker Association Inc. is insufficient to show that this local group is in any way under the auspices of that State organization. Group I is not arguing that they were denied membership based upon any ethnic, religious or racial practices of the Club. There are no State or Federal statutes referred to in the complaint, and we can think of none applicable to this situation. Under these circumstances, their complaint must fail.

Group I also argues that the trial court erred in dismissing their complaint because each of the individuals who were members in the Club in 1962 took joint title to the property upon which the clubhouse is situated. They rely upon *Venus Lodge No. 62 F. & A.M. v. Acne Benevolent Ass'n., Inc.,* 231 N.C. 522, 58 S.E.2d 109 (1950), which held that a conveyance to an unincorporated association is not void at common law, but instead vests title to the property in the individual members of the Association. Group II argues that G.S. § 39-25 controls and therefore the conveyance is properly held in the name of the Cherokee Home Demonstration Club.

We agree with Group II and affirm. While it is true that G.S. § 1-69.1 requires an unincorporated association to allege its registration for purposes of bringing suit in its collective name, there is no concomitant requirement attached to its right to hold property under G.S. § 39-25. While this produces a somewhat awkward result, it is the responsibility of the legislature to clarify the rights and obligations of these associations to sue and hold real property. We find that under the wording of G.S. § 39-25, an unincorporated, unregistered association may hold real property in its common name; however, if the association wishes to bring suit concerning this property, it must be registered in accordance with G.S. § 66-68.

## III. Conclusion

For the reasons stated above, we affirm the trial court's dismissal of plaintiff's complaint, and dismissal of defendant/third-party plaintiffs' counterclaim/third-party complaint.

Affirmed.

Judges WELLS and COZORT concur.