## ERNST v. ALLEN et al.
## ALLEN et al. v. LANGFORD.

No. 3380.    Decided November 21, 1919.    (184 Pac. 827.)

1. EASEMENTS—"EASEMENT APPURTENANT." An "easement appur-
tenant" or easement proper is a privilege which the owner of
one tenement has the right to enjoy in respect to that tenement,
in or over the tenement of another person, involving the idea
of two distinct tenements, a dominant estate, to which the right
is accessorial, and a servient estate, on which it is a burden
or charge (citing Words and Phrases, Easement). (Page 277.)

2. EASEMENTS—"EASEMENT IN GROSS." An "easement in gross"
is a mere personal interest in the real estate of another, not
assignable or inheritable, and being so exclusively personal that
the owner cannot take another person in company with him
citing Words and Phrases, Easement in Gross). (Page 277.)

3. EVIDENCE—CONSTRUCTION OF AMBIGUOUS INSTRUMENT IN VIEW OF
CIRCUMSTANCES AND SITUATION. An instrument attempting to
create an easement should be read in the light of surrounding
circumstances, the situation of the parties, and property in-
volved, where the language used is ambiguous and apparently
contradictory. (Page 280.)

4. EASEMENTS—USE OF WORDS OF INHERITANCE IN CREATING EASE-
MENT APPURTENANT. If the words "heirs and assigns" are used
in making a reservation of easement where the grantor in fact
retains no land that can be benefited by the easement, the use
of the words does not create an easement appurtenant, the ele-
ment of a dominant estate being lacking, and it is only an ease-
ment in gross; but if the deed reserving easement refers to no
land of the grantor to which the easement can be appurtenant,
but such land exists or existed, the fact of its existence may be
established to give effect to the words used. (Page 282.)

5. EASEMENTS—RESERVATION OF EASEMENT APPURTENANT WITHOUT
DESCRIPTION OF RETAINED LAND. Where the owner of a tract
of land conveyed part of it, reserving to herself, her heirs and
assigns, an equal right with the grantee, his heirs and assigns,
to a right of way for vehicles, foot passengers, animals, etc.,
over a strip of land between that conveyed and that retained,
the easement thus created was appurtenant to the retained
land, though such retained land was not described by the con-
veyance. (Page 283.)

Appeal from District Court of Salt Lake County, Third
District; *P. C. Evans*, Judge.

Consolidated actions by Helen D. Ernst against William Allen and others and by William Allen and others against Mrs. Helen Langford.

From decree for plaintiffs and defendants Allen and others, Ernst and Langford appeal.

CASE REMANDED, with directions to modify decree in accordance with views herein expressed, and JUDGMENT AS MODIFIED AFFIRMED.

*Young & Moyle,* of Salt Lake City, for appellants.

*Soren X. Christensen* and *Thomas Ramage,* both of Salt Lake City, for respondents.

THURMAN, J.

This is a controversy concerning an alleged right of way, hereinafter referred to as an "alley," ten feet wide and ten rods long, lying between and adjacent to other lands owned respectively by the parties litigant.

Each of the parties plaintiff and defendant commenced an action against the other to quiet title to the strip of land in question and for injunctive relief. At the trial, the actions were consolidated and tried together. The trial court found the issues in favor of respondents Allen et al., and a decree was entered in accordance with the findings. This appeal is taken to reverse the judgment. Numerous errors are assigned. The material facts, however, are not in dispute, and, in our opinion, the whole controversy is determinable as a question of law dependent upon the construction of one or two deeds of conveyance made and executed by the common ancestor of the parties to this action.

The common ancestor, Jane Elizabeth James, formerly owned the entire property now owned by appellant and respondents, including the alley in dispute. The land so owned by Mrs. James is situated on lot 5, block 36, plat A, Salt Lake

City survey, fronting west on the east side of Second East street between Fifth and Sixth South.

In April, 1888, Mrs. James, by warranty deed, conveyed to one Eliza Shafer, predecessor in interest of appellant, a portion of said land described as follows:

"Beginning fifty feet north of the S. W. corner lot 5, block 36, plat A, Salt Lake City survey, thence north thirty-eight feet, thence east ten rods, thence south thirty-eight feet, thence west ten rods to the beginning, reserving to the said party of the first part, heirs and assigns, an equal right with the said party of the second part, heirs and assigns, to a right of way for all manner and kind of vehicles, foot passengers, animals, loaded or not, over the following described land, to wit: Beginning seventy-eight feet north of the S. W. corner of lot 5, north ten feet, east ten rods, south ten feet, west ten rods to beginning."

The strip of ground last described as a right of way is the ground in controversy. Eliza Shafer subsequently conveyed the same property, including the alley, to one Isaac Brockbank. Mrs. James joined in this conveyance, still reserving a right of way to herself, her heirs and assigns.

At the time of the execution of these conveyances, Mrs. James was the owner of, and retained ownership of, a small parcel of the land lying north of the alley and abutting thereon, described as follows:

"Commencing at a point eighty-eight feet north from the S. W. corner of lot 5, block 36, plat A, Salt Lake City survey, north fifteen feet one and one-half inches; east ten rods; south fifteen feet one and one-half inches; west ten rods to beginning."

This is the land now owned by respondents. The entire width of this parcel, fronting on Second East street, is, and ever since before Mrs. James made the conveyance referred to has been, occupied by a building used for residence or business purposes. It extended back fifty or seventy-five feet. Back of this were sheds where the owner or occupants of the building kept their wood for fuel. On the land now owned by appellant on the south side of the alley, there were, during all the times mentioned, two or more buildings used for residential purposes. The first building fronted west on Second East street and was flush with the south boundary line of the alley. The other building was in the rear. The space be-

tween the front buildings on each side of the alley was only ten feet wide, the designated width of the alley. A ditch extended north and south on the outer edge of the sidewalk in front of the buildings, and during all the times mentioned this ditch was crossed by a bridge leading into the alley. At all times covered by the evidence in the case the alley was used as a right of way in common by the parties litigant and their predecessors in interest. As to whether or not the right of respondents and their predecessors in interest was disputed or acquiesced in by the owners and occupants on the south side of the alley, the evidence is conflicting, and we deem it unnecessary to attempt a determination of that question. The evidence, however, does satisfactorily establish the fact that the alley was used by Mrs. James in her lifetime and by her successors afterwards, for the purpose of carrying or conveying to the rear of her building coal, wood, groceries, and other articles; and the alley was not only convenient and beneficial for such purposes, but was absolutely essential whenever it became necessary to use vehicles to convey the articles mentioned. The evidence is conclusive that the alley was the only means of ingress and egress to and from the back portion of the premises without going through the building.

The following sketch, made without reference to exact scale, illustrates, approximately, the various parcels of land referred to, the street, ditch, and bridge, and is self-explanatory:

The evidence tends to show that the use made of the alley by respondents and their tenants since they moved there in 1914 has been much more extensive than that made by former occupants, and that no doubt intensified the trouble which finally resulted in the present litigation.

Appellant presents for our consideration a question which, as far as the writer is informed, has never before been determined by this court. The question is not only new in that sense, but, as we view the case, its proper determination is decisive of the main issue presented for our consideration. The question, in the last analysis, is: Can the owner in fee of a parcel of land convey a part thereof and reserve from the part conveyed a right of way for herself, heirs and assigns, over a strip contiguous to that retained by herself, unless the conveyance describes the land so retained by the grantor? Appellant contends with great earnestness and more than ordinary ability that such a reservation only reserves to the grantor a mere personal right which is neither inheritable nor assignable, notwithstanding words of inheritance and assignability are used, and notwithstanding the further fact that the grantor may have retained the ownership of contiguous lands which might be benefited by the right of way. In short, appellant contends that by the terms of the conveyance in this case, including the reservation, the common ancestor, Jane Elizabeth James, did not reserve an easement appurtenant to other lands owned by her which might be inherited or assigned, but only reserved a way in gross, which upon her death would become extinguished. This position of appellant gives no effect whatever to the words ''heirs and assigns'' occurring in the reservation in both conveyances, but construes the instruments as if these words had been omitted altogether. Many of the cases hereinafter cited support the contention of appellant that words of assignability or inheritance do not of themselves make the easement assignable or inheritable if in fact it is only an easement in gross.

Whether or not an easement in gross might be made assignable or inheritable merely by the use of words suggestive of these qualities need not be determined by us in the instant

case.   It is sufficient for our present purpose to determine whether the right of way in question here is an easement appurtenant or an easement in gross under the facts disclosed by the record and the law applicable thereto.

An "easement appurtenant," sometimes called an easement proper, has been defined as follows:

"An 'easement proper' is a privilege which the owner of one tenement has the right to enjoy, in respect to that tenement, in or over the tenement of another person." 3 Words and Phrases, p. 2306.

Again, the same authority, at page 2307, in speaking of the essential elements of an easement appurtenant, says:

"The existence of an easement involves the idea of two distinct tenements; a dominant estate, to which the right is accessorial; and a servient estate, upon which it is a burden or charge."

An "easement in gross" is defined by the same authority, at page 2311, as follows:

"An easement in gross is a mere personal interest in the real estate of another, and is not assignable or inheritable. It dies with the person, and it is so exclusively personal that the owner by right cannot take another person in company with him."

The principal distinction between the two classes of easements seems to be that in the easement appurtenant there must be a dominant tenement, while no such element exists in an easement in gross.

These definitions have been selected, from a large number examined, because of their brevity and perspicuity.   Applying them to the facts in the case at bar, we have no difficulty whatever in determining to which class the easement in question belongs.   Here we have the right of way reserved by the common ancestor out of the lands conveyed to Eliza Shafer, appellant's predecessor in interest.   At the time the common ancestor made this conveyance and reservation, she had and retained ownership of other lands abutting on the right of way which would be permanently benefited thereby. Indeed, the purpose of the reservation is so manifest, when we consider the surroundings, as to be self-evident and apparently incontrovertible.   If the land conveyed by Jane Elizabeth James had been all the land she had and she had reserved therefrom a right of way, it might well be conceded

the right would have been merely an easement in gross; there would have been no dominant tenement to which the right of way could have been appurtenant. But such we have seen was not the case. At the very time she made the conveyance and reserved the right of way, she owned other lands upon which she was residing—land contiguous to the right of way and dependent upon it as a means of ingress and egress to and from the back portion of her premises.

It seems to us that this matter is too plain for controversy. The right of way in question, viewed in the light of the surrounding circumstances, has all the earmarks of an easement appurtenant, and unless, as contended by appellant, it was necessary in the deed to describe the dominant tenement or land to which the right of way was appurtenant, the judgment should be affirmed as far as the right of way is concerned.

In support of her contention that the right of way in question is a mere easement in gross and not an easement appurtenant, and that a deed creating an easement appurtenant should describe the dominant estate, appellant calls our attention to the case of *Cadwalader* v. *Bailey*, a Rhode Island case, found in 17 R. I. 495, 23 Atl. 20; 14 L. R. A. at page 300. Appellant also cites and relies on all the cases referred to in the opinion of the court, to which we direct the attention of the reader. Appellant appears to rely with great assurance upon the doctrine enunciated in that case and the cases cited, for only one or two other cases are referred to in her brief. We cannot afford to review the case at length, but the controlling facts are that certain grantors owned the land conveyed and also other land known as "Bailey's Beach." The grantors conveyed the first-mentioned land to Cadwalader, with certain bathing rights on the beach, and also stipulated in the deed for themselves, their heirs, administrators, and assigns, that no building except bathing cars should ever be constructed on Bailey's Beach, etc. Cadwalader thereafter sold all of the land so conveyed to him, but undertook in the conveyance to reserve to himself, his heirs and assigns, the right pertaining to the building restriction to which reference

has been made.  A descendant and residuary legatee of Cad-
walader brought the action to enforce the restriction.  The
court, in concluding the opinion, says:

"It follows, then, that the complainant, never having owned the
dominant estate described in the bill, has no standing in a court
of equity to enforce rights which were appurtenant thereto."

Thus, we see, the first Cadwalader, having sold the dom-
inant estate, could not retain the naked right to enforce the
building restriction.  At most, it was only an easement in
gross which at his death became extinguished.  This is an au-
thority directly in point on the proposition heretofore sug-
gested that if Jane Elizabeth James, the common ancestor,
when she made the conveyance referred to, had conveyed
away all her land, the reservation of a right of way would
have been merely an easement in gross.  So far from this case
being an authority for appellant in her present contention, it
seems to us it tends to support the position of respondent.
The clear inference is that, if the first Cadwalader had not
disposed of the land intended to be benefited by the restric-
tion, the court would have sustained the action brought by his
devisee.

However, while that particular case, for the reasons stated,
seems to be against appellant's contention, it must be con-
ceded that one of the cases cited in the opinion is exactly in
point to the proposition that, unless the dominant estate is
described in a deed of conveyance, any easement attempted to
be created is only an easement in gross.  *Wagner* v. *Hanna,* 38
Cal. 111, 99 Am. Dec. 354, is the only case called to our at-
tention, and the only one we have been able to find, that holds
to that effect.  The first four paragraphs of the syllabi reflect
the opinion of the court:

"When the owner of a tract of land sells one-half of it, reserving
a right of way across it, and in the same deed grants to the vendee
a right of way across the unsold half, these rights are not annexed
to, or appurtenant to, the respective tracts, and do not pass with the
title.  Whether the grant of a right of way be in gross, or appurte-
nant to some other estate, must be determined from the grant
itself, and not by matters aliunde.

"The principal distinction between an easement and a right of

way in gross is that in the first there is, and in the second there is not, a dominant tenement.

"The grant of an easement is always made for the benefit of other premises, which are described in the grant.

"A right of way is an interest in lands, to be conveyed only by an instrument in writing, which must describe the interest conveyed. If it is appurtenant to another tract, it must be so described, together with the tract of land to which it is appurtenant."

The opinion is by a divided court, and is otherwise inherently weak and unsatisfactory.

The overwhelming weight of judicial opinion, as we read the cases, is to the effect that an instrument attempting to create an easement should be read in the light of    3 surrounding circumstances and the situation of the parties and property involved, especially where the language used is ambiguous and apparently contradictory.

In *Peck* v. *Conway*, 119 Mass. 546, in which the deed created an easement, it does not appear that the dominant estate was described in the deed. The doctrine of the opinion is clearly reflected in the syllabi, the first paragraph of which is as follows:

"A reservation in a deed of land, that no building is to be erected by the grantee, his heirs or assigns, upon the land conveyed, creates an easement, or a servitude in the nature of an easement, upon the land; and the situation of the land relatively to other land of the grantor may be considered in determining whether such easement or servitude is a personal right of the grantor or is appurtenant to his other land."

In *Dennis* v. *Wilson*, 107 Mass. 591, the same condition exists. It is not apparent that the deed described the dominant estate. Notwithstanding this, an easement appurtenant was sustained. The following paragraph from the court's opinion, on page 592 of 107 Mass. is in point:

"In this case, Jenkins conveyed to Rice part of his entire tract of land. The right of way, excepted and reserved, extended from the highway in front, along the line of division, for a specified distance, less than the whole depth of the lots. As the grantor could have no occasion, apparently, to use such a way for any other purpose than for access to and egress from his remaining land, the inference would seem to be inevitable that it was for that use that both parties must have understood and intended the way to be held."

See,. also, *Badger* v. *Boardman,* 16 Gray (Mass.) 560, in which the court held that no easement was created. We cite the case, however, to the point that, in attempting to determine the meaning of an instrument purporting to reserve an easement, the circumstances surrounding the parties, their situation when the deed is made, and the situation of the property with reference to other lands of the grantor, may be considered.

In *Winston* v. *Johnson,* 42 Minn. 398, 45 N. W. 958, a right of way was involved. We quote the fourth paragraph of the syllabi, which, so far as the point in review is concerned, states the essence of the opinion:

"Where there is in the deed no declaration of the intention of the parties in regard to the nature of the way, it will be determined by its relation to other estates of the grantor, or its want of such relation. Resort may also be had in such a case to other circumstances surrounding the transaction, for the purpose of ascertaining the intent and the effect to be given the instrument."

In *French* v. *Williams,* 82 Va. 462, 4 S. E. 591, we have a case from which we feel impelled to quote at considerable length. Before doing so, however, we refer for a brief moment to the deed of Jane Elizabeth James, under which both the parties to this controversy claim, and the language therein "her heirs and assigns." Appellant contends that these words are meaningless and without effect. On the other hand, it must be admitted that the words, both in their technical and ordinary meaning, imply something more than a mere easement in gross as heretofore defined. If, then, because of some technical rule of law, as contended by appellant, these words have lost both their technical and ordinary meaning, it is our duty, if possible, to find for what purpose the words were used. If the purpose does not fully appear in the instrument itself, then there arises an ambiguity which may be explained by the surrounding circumstances, the situation of the parties, and the property involved. The case last referred to is also concerning a right of way. The following excerpt from the opinion, on pages 468 and 469 of 82 Va., on page 594 of 82 Va., is self-explanatory:

"Nor is it specifically stated in the deed that F. T. Moreland

owned the entire tract, or that he retained the part not sold to French. In fact, the failure of the deed to specify that Moreland owned or retained any land to which the 'way' reserved could be appurtenant is strongly urged to uphold the contention that the way reserved was of a right in gross and not of a right appurtenant.

"Hence, the absolute necessity, if the substance, and not the shadowy form, of the contract is to be looked to, of resorting to extrinsic evidence to ascertain the true intent and meaning of the parties, by having recourse to the circumstances which surrounded them at the time, and in the light of which they executed the contract. This is all the more important in view of the rule that a way is never presumed to be in gross when it can fairly be construed to be appurtenant to land. Wash. E. and S. 232. And in view of the further rule 'that parties are presumed to contract in reference to the condition of the property at the time of the sale.' Wash. E. and S. 79. And these principles are all the more applicable inasmuch as the way here is reserved to 'Moreland, *his heirs and assigns*,' language which strongly tends to preclude the idea of a reservation in gross. Moreover, the way reserved is 'as now and heretofore used,' but the deed, whilst it further designates it as 'from the east back street of said town, leading by the old stone house, to the back mill road,' yet fails to describe the character of way referred to, or whether it was entirely or only in part, over the land conveyed to French.

"It is essential to understand all these things in order to uphold and enforce the contract according to its true meaning; and to understand them resort must be had to the real state of facts and circumstances surrounding the parties when they entered into the contract. It is clear, therefore, that parol evidence is admissible to explain the surroundings, and to enable the court to place itself in the same situation occupied by the parties who made the contract, and thus, in view of all the attendant circumstances, to judge of the meaning of the words used, and of the proper application of the language to the way which, to say the least is, in some measure, ambiguously described."

One further suggestion to make our meaning clear in respect to the use of the words "heirs and assigns" or similar words, and the effect that should be given to them in instruments of this kind: If such words are used in making a reservation in cases where the grantor in fact retains no land that can be benefited by the easement, then the use of such words cannot have the effect of creating an easement appurtenant, for the element of a dominant estate

is lacking. In such case it is only an easement in gross. If, on the other hand, the words "heirs and assigns," or similar words, are used in a deed reserving an easement, and the deed refers to no land of the grantor to which said easement can be appurtenant, but such land in fact exists, or existed when the reservation was made, the fact of the existence of such land may be established in order to give effect to the words used in making the reservation.

We also call attention to the following cases, more or less to the same effect as those already considered: *Clark* v. *Martin*, 49 Pa. at page 297; *McMahon* v. *Williams*, 79 Alá. at page 288.

It would serve no useful purpose to multiply cases in support of the doctrine enunciated in the opinions above referred to. We have examined and carefully read many times the number of cases above cited, and are satisfied that the selections made reflect the great weight of judicial opinion. It would be a harsh rule indeed that would deprive respondents in this case of an appurtenance almost indispensable to a comfortable enjoyment of their property— an appurtenance enjoyed by them and their predecessors in interest, under a substantial claim of right, for more than a quarter of a century. We refer specifically to the right of ingress and egress to and from their property for the benefit of which the easement was created. Respondents, however, can claim no greater right than that reserved in the deed of their ancestor, Jane Elizabeth James. The right to fry fat or to permit their horses to stand in the alley except while loading and unloading vehicles, or to make any kind of filth therein, is not permissible under the terms of the reservation creating the right of way; and even for the purpose of loading and unloading vehicles only such length of time should be permitted as is reasonably necessary for the purpose. The decree should be modified in these respects. The conclusion reached is decisive of all the questions involved.

The case is therefore remanded to the trial court, with directions to modify the decree in accordance with the views herein expressed, and the judgment so modified may be, and

is hereby, affirmed. The parties to pay their own costs on appeal.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.