EDITH V. COMSTOCK & another *vs.* MARGARET DEWEY & others.

Berkshire. September 21, 1948. — January 5, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Voluntary Association. Club. Trust,* Shares. *Public Policy. Probate Court,* Appeal, Stipulation, Findings by judge.

On an appeal from a decree of a Probate Court, without a report of the evidence or of findings by the judge, the only question before this court was whether the decree could properly have been entered on the pleadings; and the entry of the decree imported a finding of all facts in support of the decree which were permissible under the pleadings.

In a proceeding in a Probate Court, the contents of a stipulation by counsel not bearing the approval of the judge, and statements by counsel in their briefs as to evidence not appearing in the record, could not be accepted as evidence by this court on appeal.

An unincorporated club was not a legal entity and could not hold title to shares in a trust standing in the name of the club; title was in the members of the club jointly.

There was nothing contrary to public policy or to any rule of law in the members of an unincorporated club, as joint owners of shares standing in the name of the club in a trust established principally for the club's benefit, conferring upon the directors of the club the control and management of such shares including power to appoint a proxy to vote the shares at meetings of the shareholders of the trust pursuant to a provision of the trust instrument permitting shares to be voted by proxy; and an intent of the parties, that the club should participate in the management of the trust by voting of the shares at shareholders' meetings by a proxy so appointed, was shown by the close relationship between the trust and the club and by the fact that for many years the shares had been so voted and the votes recognized by the trust, and such intent must be given effect.

PETITION, filed in the Probate Court for the county of Berkshire on May 21, 1946, and afterwards amended.

The case was heard by *Hanlon*, J.

*F. H. Wright*, for the respondent Dewey and others, submitted a brief.

*S. Q. Curtiss*, for the respondent Brothers and others.

No argument nor brief for the petitioners.

RONAN, J. This is a petition in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, brought in the Probate Court for the county of Berkshire by two trustees and holders of certificates of shares of the Thursday Morning Club Trust of Great Barrington, Massachusetts, a voluntary trust created by a declaration of trust dated March 17, 1915, and recorded in the registry of deeds, seeking a declaratory decree concerning the administration of this trust, created by a written instrument and so within the jurisdiction of the Probate Court by virtue of G. L. (Ter. Ed.) c. 215, § 6, as amended by St. 1939, c. 194, § 2, as to whether the shares of the trust held in accordance with the records of the trust in the name of the Thursday Morning Club of Great Barrington, an unincorporated voluntary association, were properly voted in the election

of the trustees at the adjourned annual meeting of the
shareholders of the trust on March 25, 1946, by those pur-
porting to have been duly authorized by the club to vote
these shares in behalf of the club, so that, if these votes on
these shares were to be counted, a group known as the
Brothers group were duly elected trustees for terms of three
years; otherwise a group known as the Dewey group were
elected.  One of this latter group appealed from a final
decree that the club had the right to vote the shares by its
duly authorized proxies and that the vote cast by these
proxies at the adjourned annual shareholders' meeting of
the trust held on March 25, 1946, should have been counted
in determining the election of the trustees.

In the absence of any report of the evidence or findings
by the judge, the only question presented is whether the
decree could properly have been entered on the pleadings.
*Hale* v. *Blanchard*, 242 Mass. 262, 264.  *Gorey* v. *Guarente*,
303 Mass. 569, 570.  The entry of the decree imports a
finding of all facts in support of the decree which are per-
missible under the pleadings.  *Brogna* v. *Commissioner of
Banks*, 248 Mass. 241.  *Novick* v. *Novick*, 299 Mass. 15.
We cannot accept as evidence anything contained in the
stipulations of counsel not approved by the judge or state-
ments of counsel contained in their briefs pertaining to
evidence not appearing in the record.  *Lucier* v. *Williams*,
*ante*, 458.

The petition alleges that the trust instrument, which is
made a part of the petition, provides that the shares of the
trust may be voted by proxy; that a majority of votes shall
determine any question; that the club is the beneficiary of
the trust and owns shares which stand on the books of the
trust in the name of the club and have always been voted
at the annual meetings by representatives of the club ap-
pointed by the directors of the club; that at the 1946
annual meeting of the shareholders, a controversy arose
as to the right of the club to vote these shares for the elec-
tion of trustees; that these shares were voted for the election
of certain respondents (the Brothers group) through its duly
authorized representatives; and that these votes together

with others cast for the same respondents constituted a majority of the votes, but that the presiding officer declined to recognize the vote cast by the club's representatives and refused to declare those respondents who received a majority vote to have been elected trustees of the trust. The answer of those of the respondents comprising the Dewey group does not challenge the truth of any of the allegations of fact contained in the petition, but merely alleges that the shares were owned not by the club but by its individual members, that the shares could not be voted by representatives of the club, and that the individual members could not vote because each owned a fractional share and a fractional share could not by itself be voted.

Before considering these technical objections, it is well to consider the express purpose and the actual administration of the trust, its relation to the club, the custom and usage of the membership of the club with reference to participating in the affairs of the trust, and the recognition by the trust of the manner in which the club managed the shares issued to it. An inspection of the trust instrument discloses that the immediate and primary purpose for the creation of the trust was to acquire certain real estate for the use and benefit of the club and that, upon the termination of the trust, the proceeds from the sale of its property, after paying the shareholders, should be held or disposed of for the benefit of the club if then in existence. In new subscriptions for shares subsequent to the original subscription, preference was to be given to existing shareholders and members of the club. It is alleged in the petition, and so far as appears could have been found by the judge, that the club is the principal if not the sole beneficiary of the trust; and that shares in the trust stand on the books of the trust in the name of the club and have always been voted at the annual meeting of the shareholders by persons appointed by the directors of the club. It could be found that the intent of the parties to the trust instrument in the creation and administration of the trust was to provide and maintain a parcel of real estate for the use and occupancy of the club; that shares should be purchased by members of the club;

that the club, in a popular sense, should be considered as holding shares in the trust; that the club should have a voice in the management of the trust and in the election of its trustees; and that a proxy selected by the board of directors of the club should be recognized as duly authorized to vote the shares recorded on the books of the trust as owned by the club. The intent of the parties in formulating and executing a plan for the benefit of the club giving a collective voice to the membership of the club acting through its board of directors in the administration of the trust should be given effect unless forbidden by some positive rule of law or violative of public policy. *Hull* v. *Adams,* 286 Mass. 329, 333. *Dumaine* v. *Dumaine,* 301 Mass. 214, 218. *State Street Trust Co.* v. *Crocker,* 306 Mass. 257, 260.

Custom and usage of the club for thirty years in voting the shares and the acquiescence of the trust in recognizing the vote of the shares by the proxy of the club are not to be disregarded in determining the intent of the parties, especially where the shareholders were not strangers to the members of the club and where there was a close affiliation between the trust and the club. See *State* v. *Hicks,* 154 N. C. 265, 268.

The club was not a legal entity and could not hold title to these trust shares; the ownership thereof vested in the members of the club who owned them jointly for the purpose for which the club was organized and maintained, *Torrey* v. *Baker,* 1 Allen, 120, *Byam* v. *Bickford,* 140 Mass. 31, *Hanley* v. *American Railway Express Co.* 244 Mass. 248; but the members could collectively transfer the management and control of the shares to the directors of the club and confer upon them the power to appoint a proxy to vote the shares at the annual meetings of the shareholders of the trust. So far as the record goes, these shares may have been purchased with the funds of the club and taken in its name as a matter of convenience and the management of the shares entrusted to the board of directors by virtue of some rule or by-law of the club. One becoming a member of the club assumed an obligation in the nature of a contract to become bound by such a rule or by-law in so far as it

was not inconsistent with some principle of law.  *Hill* v. *Rauhan Aarre*, 200 Mass. 438.  *Snay* v. *Lovely*, 276 Mass. 159.  *Sullivan* v. *Barrows*, 303 Mass. 197.  There is nothing contrary to public policy for the owners of shares to authorize one to vote the shares at a meeting of the shareholders. Indeed, the trust instrument specifically provides that the shareholders may vote by proxy, and there is no limitation on the number of shares a proxy might represent.  *Brightman* v. *Bates*, 175 Mass. 105.  *Bullivant* v. *First National Bank*, 246 Mass. 324.  *Abbot* v. *Waltham Watch Co.* 260 Mass. 81.  *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434, 440.

The voting of the shares by a representative of the club was a practical and efficient method of giving the club a voice in the administration of the trust.  We do not know the number of shares held in the name of the club nor the number of outstanding shares of the trust.  It might be that no quorum could be had at the annual meetings of the shareholders if the shares issued in the name of the club were not represented.  If a proxy were selected by the individual members of the club, a check up of the membership would have to be made just before the meeting to make certain no changes in the membership had occurred since the proxy was given.  It may have been for the purpose of avoiding such a difficulty that the shares were issued in the name of the club and a provision inserted in the trust instrument to the effect that "The name in which the certificate stands upon the books of the trustees shall be considered by them conclusive evidence of ownership of the shares . . .."

The trust instrument provides that no individual shall hold more than fifty shares.  As already pointed out, we do not know the number of shares which were issued in the name of the club and, even if the shares exceeded fifty, they were held not by an individual but by a group of individuals who comprised the club.

*Decree affirmed.*