DESERET LIVESTOCK CO. v. SHARP et al.

No. 7368.   Decided July 21, 1953.   (259 P. 2d 607.)

See 26 C.J.S. Dedication, sec. 51. Prescription, way acquired by. 17 Am.Jur. Easements, sec. 100; 47 A.L.R. 552.

*McKay, Burton, Nielson & Richards,* Salt Lake City, for appellant.

*Anderson & Cannon,* Salt Lake City, for defendants, respondents and cross appellants.

*Edward W. Clyde,* Salt Lake City, for intervener, respondent and cross appellant.

McDONOUGH, Justice.

Plaintiff is a large livestock company, owning and leasing strategic tracts of land in Skull Valley with the value and use of said lands being limited to the grazing, pasturing and driving of livestock, particularly sheep herds. A trail, intermittently obscured by alluvial fans, meanders up the east side of the valley crossing mostly over land of public domain but customarily crossing over plaintiff's land in order to avoid natural obstacles and certain plant growths which are noxious to hungry sheep. This trail has been used for vehicular traffic and has been traveled by various sheep outfits, including those of plaintiff, defendant and intervener, and their predecessors in interest, for over 50 years. Burnt Springs is a spring adjacent to this trail, flowing upon land owned by plaintiff, but used by the herds as they travel over the trail. A fence, enclosing the spring, was erected by plaintiff in 1947.

Defendants and intervener, since 1939, have jointly owned and operated approximately 11,000 sheep. They have utilized the above trail twice each year and have watered their stock at Burnt Springs while so doing. Intervener, or its predecessor, has operated in this manner for over half a century. This controversy arose in 1947 when defendants and intervener utilized the above trail and grazed off portions of the land prior to the time plaintiff had fully utilized these lands for its own sheep. Plaintiff sued for alleged trespass and sought injunctive relief and punitive damages. Defendants and intervener denied the trespass and alleged that they had the right to trail over the lands of plaintiff by reason of a public "high road",—the aforementioned trail—,which was "not less than 150 feet in width," and by reason of an easement obtained by themselves and the public through many years of use.

The trial court found that a public road 100 feet wide did exist and had never been abandoned; that the intervener did have a private prescriptive right to trail 11,000 sheep along this road and to spread them out over an approximate width of 3,000 feet while so doing. The court further found that the plaintiff had no exclusive right in the waters of Burnt Springs and that the intervener had a prescriptive right to water its 11,000 sheep at Burnt Springs and that in so doing it could spread them out over a width of 500 feet on each side of the spring to a point 800 feet distant from the headwater. The court denied recovery for damages resulting from the alleged trespass and denied any injunctive relief to the plaintiff.

Plaintiff's first contention in this appeal is that there was no competent evidence of either a public or private "high road" over these lands and that a county road to the West is the only public or private means of access. There is no merit in this contention; there is substantial and competent evidence indicating that a

public road 100 feet in width did exist and had never been abandoned and we find no basis upon which to disturb the finding of the lower court.

Defendants and intervener contend on cross appeal that such a public road should have been found to be 2,000 feet in width instead of 100 feet since the lower court found that 2,000 feet is reasonably necessary for the trailing of sheep through the area. Three Utah cases[1] are cited by defendants and intervener as authority for the general proposition that the width of the road is that which is reasonably necessary for the purposes established by public use. While the validity of this proposition is without doubt, we cannot agree that 2,000 feet was dedicated to the public. In *Morris* v. *Blunt,* 49 Utah 243, 161 P. 1127 we held that in order to establish a dedication, the travel upon the road must constitute a use by the public; we must consider the people who use the road. In the instant case, the 100 feet in width was traveled by various groups for a variety of private and commercial purposes while a use beyond the 100 feet was devoted to the driving and grazing of sheep. Compare the case made as to these sheepmen to the situation disclosed by the evidence in *Lindsay Land and Livestock* v. *Churnot,* supra, *and Jeremy* v. *Bertagnole,* supra. In these latter cases, the use made by the general public corresponded to the width of the road reasonably necessary for driving sheep, the maximum width allowed by either of the cases being 100 feet. In the Lindsay case, we expressed some doubt as to whether a public dedication would have been established if the claim rested alone upon the trailing of sheep, and although evidence in the case indicated that herds of sheep while trailing occupied a space of four hundred yards, the court limited the road as established to 100 feet in width. Further, it is difficult to reconcile the instant case with the

---

[1]*Whitesides* v. *Green,* 13 Utah 341, 44 P. 1032; *Lindsay Land and Livestock Company* v. *Churnos,* 75 Utah 384, 285 P. 646; *Jeremy* v. *Bertagnole,* 101 Utah 1, 116 P. 2d 420, 422.

Lindsay and Jeremy cases with regard to the width reasonably required for trailing sheep. Here the trial court found 2,000 feet to be reasonably necessary while the other cases established a limit of 100 feet. The distinction cannot be made, as contended by defendants and intervener, on the basis of natural geographical conditions confining the sheep to the 100 feet in width. The road in the Jeremy case "crossing over mountains, rolling hills  *  *  *  and through narrow canyons and ravines," the evidence indicating that in some instances the sheep would have a tendency to spread out over a mile or more.[2] Therefore the additional width must be based on a private right not just for mere trailing or driving of sheep, but rather, as indicated by the trial court and admitted by defendants and intervener, for the purpose of *grazing* sheep as they moved across plaintiff's land. Defendant and intervener characterize this alleged right as an easement in gross. We agree that the alleged right is not connected with nor for the benefit of any dominant estate and hence in gross rather than appurtenant. Gale on Easements, 10th Ed., page 18. However, the grazing of sheep is more than a privilege,—an easement, it is a privilege plus a profit,— the taking of forage—,and generally characterized by the authorities as a profit a prendre.[3]

The fundamental issue in this case is: In the absence of statute, may a person through prescription acquire a profit a prendre in gross? While we reserve a general answer to the foregoing question, we think that under the facts of this case, the authorities are correct in stating that prescription will not establish

---

[2]518 Abstracts and Briefs, Supreme Court of Utah, Case No. 6216, Appellant's Brief, Page 8.

[3]*Gale on Easements*, supra, page 1; *Jones on Easements*, Sec. 57, page 45; *Thompson on Real Property*, Perm.Ed., Sec. 270, page 432; *Washburn's Easements and Servitudes*, 4th Ed., page 4.

such a right.[4] In Gateward's Case, 6 Co.Rep. 59b, 77 Eng. Rep. 344, we find the initial announcement of the concept, the court reasoning that a profit allegedly acquired by custom without a dominant estate would create an interest in the land approximating a fee, the interest being transitory, altogether uncertain, in no way controlled by the needs of a dominant estate, and hence a right so unqualified cannot exist in the soil of a private landowner. In commenting on the case, Lord Coke said: "Note reader the law in this general case well resolved and no book in the law is adjudged against it." Although the case concerned acquisition of a public right by custom, extensive public use virtually depriving the landowner of his entire interest, when the deprivation would be as extensive by allowing a private prescriptive right, the rule has been extended. *Merwin* v. *Wheeler*, 41 Conn. 14. In the instant case we have a situation where the plaintiff's land is of little value except for the grazing of livestock and if we deprive plaintiff of this benefit, it is left with an empty fee interest, requiring the payment of taxes but with no commensurate value. Therefore, add these facts to the foregoing rule and we have the particular situation succinctly expressed in *Merwin* v. *Wheeler*, supra as follows:

"It is further to be observed that the property in dispute appears to be valuable mainly and perhaps solely for its sand as an article of merchandise. An unlimited right in the defendant to take and sell all the sand is therefore equivalent to full ownership and is inconsistent with the title in fee of the plaintiffs. The claim of such a right in another's land by custom or by prescription is unnatural and unreasonable, and is not sanctioned by the law. If allowed the whole beach would be at the defendant's mercy. A prescription as well as a custom to be valid must not be unreasonable."

The courts have announced a contiguous rule when dealing with an easement, saying that it must be a right to use

[4] 1 *Jones' Blackstone*, Sec. 354, page 1064; *Gale on Easements*, supra, page 200; *Jones on Easements*, supra, Sec. 53, page 41; 4 *Tiffany Real Property*, 3rd Ed., Sec. 1194, page 553; *Thompson on Real Property*, supra, Sec. 265, page 426.

the land of another for a special purpose, not inconsistent with the general property in the landowner. *Nielson* v. *Sandberg*, 105 Utah 93, 141 P.2d 696; *Etz* v. *Mamerow*, 72 Ariz. 228, 233 P.2d 442. We hold therefore, that the rights which defendant and intervener have acquired are in common with other members of the public, being limited to a way 100 feet in width.

The third issue raised by appellant is in respect to the use of the water which flows from Burnt Springs. It is settled law in Utah that one acquiring title to public lands does not also acquire title or interest in or to water flowing upon that land. *Riordian* v. *Westwood*, 115 Utah 215, 203 P.2d 922; *Smith* v. *Sanders*, 112 Utah 517, 189 P.2d 701; *Holman* v. *Christensen*, 73 Utah 389, 274 P. 457. The record reveals that intervener and their predecessor and defendant had used the waters of Burnt Springs in conjunction with plaintiff and other members of the general public for a period extending over 50 years. There was nothing in the record to show a valid appropriation of water by plaintiff, respondents, or any one else. Such evidence is sufficient to support the trial court's finding that such water is still unappropriated public water and we conclude that respondents have an equal right with all other members of the public, including the plaintiff, to use the water as they desire until a superior right to such water is established. Insofar as the finding of the trial court carries the implication that the plaintiff has established no right to the use of the waters of Burnt Springs, it is modified to conform with the foregoing conclusion.

The record also substantiates the finding that the public road found by the trial court led right to Burnt Springs, or within a rod or two of it, and that the herds, as they traveled through the area always trailed to the spring, watered, and trailed on. Further, under the finding that the road was 100 feet in width, the springs would be reachable without getting off the public

road. Since plaintiff established no better or superior right to the water than holding it in conjunction with other members of the public, they had no right to fence across such road and obstruct the use of the road, nor to obstruct access to the stream as far as any person having any right of access thereto.

In view of these facts the court decree which

"ordered, adjudged and decreed that the fence maintained by plaintiff across the public road and around the waters of Burnt Springs is wrongful and the plaintiff is hereby ordered to remove said fence as it obstructs the public road"

must be affirmed.

The court, however, has no power to require plaintiff to provide facilities for the watering of intervener's sheep, nor to arrange for them to spread out on plaintiff's land for a distance of 1,000 by 800 feet. Let it suffice that respondents be allowed only that area which is reasonable and necessary in the proper exercise of their right as one of the public to use the water.

The case is remanded with directions to enter a decree in accordance with the views expressed herein. Each party shall bear his or its own costs.

WOLFE, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.