436 P.2d 230

Orlo S. MAW, R. John Maw, and Vadel T. Maw, Plaintiffs and Appellants,

v.

WEBER BASIN WATER CONSERVANCY DISTRICT, Defendant and Respondent.

No. 10823.

Supreme Court of Utah.

Jan. 11, 1968.

Glen E. Fuller, Orval C. Harrison, Salt Lake City, for appellants.

Neil R. Olmstead, Ogden, E. J. Skeen, Reid W. Nielson, Salt Lake City, for respondent.

CALLISTER, Justice:

In 1936, Annie C. Maw, grandmother of appellants, granted the Ogden Duck Club a right of way over her property. The agreement contained, among others, the following provision:

> In consideration of nonassessable shooting privileges on said shooting grounds

of Grantees on days excepting the opening day, Saturdays, Sundays, and holidays, to be enjoyed by, and hereby granted to, the sons of Grantor named as follows, to wit:

Wilmer J. Maw, Rufus J. Maw, Gilbert Maw, and George Maw, Grantor agrees to maintain in a travelable condition the road which is a part of the right of way herein granted to Grantees, * * * provided that in any year the said Wilmer J. Maw, Rufus J. Maw, Gilbert Maw, and George Maw may designate one son for each thereof to shoot and enjoy the privileges hereunder in place of such son's father; but it is expressly understood that blinds on the shooting grounds of Grantees being used at any time by said sons shall be given up to members of the Ogden Duck Club upon request.

The land over which the right of way traversed was purchased in 1957 from the successors in interest of Annie C. Maw to become a part of the Weber Basin Reclamation Project. The project made it necessary for Ogden Duck Club to relocate their clubhouse and they now use a different access.

Prior to entering into the land purchase contract, the sellers advised the Weber Basin Water Conservancy District that unless the shooting privileges were protected there would be no voluntary sale and it would be necessary to litigate the matter in a condemnation proceeding. Whereupon, the District advised by letter that any interests not covered by the contract which might be destroyed or damaged by construction of the dam would be appraised at a later date and an offer to purchase would be made. In reliance on this letter, the contract of sale was executed.

Appellants, sons of Wilmer, Rufus and Gilbert Maw, claim they are the successors to their deceased father's shooting privileges and, in this action, seek to recover the fair market value of the privileges which were terminated.

This is the second time this matter has been before this court. On the first appeal, George Maw, a surviving son of Annie C. Maw, was a party together with his nephews, the present appellants. This court reversed a trial court decision which had been adverse to George and present appellants and, in so doing, stated:[1]

There can be no doubt that at the time the land purchase contract with the United States Government was executed, *George C. Maw,* one of the appellants and a *named son* in the 1936 "Right-of-Way Agreement," was *entitled to the shooting* privileges provided therein. The court erred in dismissing the complaint with prejudice against the Weber Basin Water Conservancy District, for it is clear that

1. 15 Utah 2d 271, 391 P.2d 300 (1964).

in order to avoid condemnation proceedings it agreed to evaluate and pay for any shooting privileges if the construction of the dam caused their loss. * * (Emphasis added)

Upon remand, the trial court permitted only George Maw's claim to be submitted to the jury.[2] It refused to submit those of the appellants, ruling that, as a matter of law, the 1936 agreement did not by its terms or by interpretation or usage over a period of years or at all run to the benefit to other than the named sons of Annie C. Maw. It ruled correctly.

■ There was before the trial court a clear and unambiguous agreement which expressly granted shooting privileges to designated individuals. This shooting privilege was in the nature of a noncommercial easement in gross which by the very terms of its creation is limited to those persons specified. It was a mere personal interest in the property of the Ogden Duck Club, and was not assignable or inheritable.[3]

■ Appellants' contention that the District's letter, referred to above, created a third party beneficiary contract in their favor is without merit. This letter, promising compensation for existing interest, could not create new property interests and,

of course, the District could not grant an easement in gross in the property of the Ogden Duck Club.

■ Finally, appellants' claim that the court below erred in striking from their complaint the prayer for punitive damages is also without merit. The appellants, having failed to establish any grounds for compensatory damages, are not entitled to punitive damages.[4]

Affirmed. Costs to respondent.

CROCKETT, C. J., and TUCKETT, and HENRIOD, JJ., concur.

ELLETT, Justice: (concurring).

I concur in affirming the judgment of the trial court insofar as it held that appellants were not entitled to recover. Another ground for denying recovery goes back to the prior hearing involving this same matter and these same parties. See 15 Utah 2d 271, 391 P.2d 300.

In 1936, Annie C. Maw and the Ogden Duck Club, hereinafter referred to as the Duck Club, entered into a contract whereby Mrs. Maw gave a right of way over her land for the use of members of the Duck Club, and in consideration therefor the Duck Club promised that so long as Mrs.

1. 15 Utah 2d 271, 391 P.2d 300 (1964).
2. Pursuant to a jury verdict, George Maw was awarded a judgment and he is not appealing.
3. Ernst v. Allen, 55 Utah 272, 184 P. 827 (1919); 130 A.L.R. 1254; Restatement

of Property, pp. 3044–3046; 25 Am.Jur. 2d, p. 499.
4. Graham v. Street, 2 Utah 2d 144, 270 P.2d 456 (1954).

Maw's three sons lived, each could hunt on the club and use the facilities free of charge. The Duck Club put a further limitation in that the clubhouse should be maintained on Sec. 12, Tp. 7 N., R. 3 W., S.L. Base and Meridian.

When the Weber Basin Water Conservancy District, hereinafter called Weber Basin, began to condemn land for the construction of Willard Dam and Reservoir, it undertook to purchase without condemnation proceedings about one thousand acres of land formerly owned by Annie C. Maw and at the time in question owned by W. John Maw and Sons, a corporation, and Grace B. Maw.

Through some deal between the landholders, the Duck Club, and Weber Basin, the Duck Club gave a quitclaim deed to the landowners for the old right of way given by Annie C. Maw, and Weber Basin gave a new right of way over a new road to the Duck Club.

The Duck Club moved its clubhouse a short distance but not off of Section 12, as above. It continued to maintain its shooting grounds as formerly.

At the original trial the trial court dismissed these appellants' claim as to both the Duck Club and Weber Basin. This court affirmed the trial court insofar as the dismissal of the Duck Club was concerned and reversed the trial court as to Weber Basin, and by doing so it committed two patent errors.

In the first place, the Duck Club breached its contract in terminating the hunting rights belonging to the three sons, who were third-party beneficiaries under the contract between Annie C. Maw and the Duck Club. It was obligated to allow the sons to hunt so long as it maintained shooting grounds and the clubhouse on Section 12.[1] Since it was doing both, it had no right to terminate the privileges of the three sons while they lived. It got paid for the right of way in the deal whereby it got a new road to the Duck Club in lieu of the old road.

In the second place, it was error to hold Weber Basin liable, for Weber Basin took nothing from the sons. The sons still had hunting privileges except for the wrongful conduct of the Duck Club.

The manager of Weber Basin wrote to the landowners the following:

It is our understanding that you have executed a contract for the sale to the United States of Tracts Nos. 95, 104 and 106, Willard Dam and Reservoir.

This letter will assure you that the land purchase contract does not cover your other property in the Willard Bay area, and specifically your state leases, water rights, easements, licenses, *duck club shooting privileges* or land other than those described in the land purchase contract. *Any such property interest which will be required in the construction of the dam or which will be damaged or de-*

*stroyed will be appraised at a later date and an offer to purchase will be made.* (Emphasis added)

No hunting right was ever required in the construction of the Willard Dam and Reservoir and none was ever taken by Weber Basin.

This court was in error when it heretofore held that Weber Basin was liable, and we should now acknowledge it. If any of these appellants have been damaged at all, such damage was caused by the conduct of the Duck Club and not by Weber Basin.