Clayton CRANE, J.B. Crane, Larry Crane, Vernon Crane, Ward Forsyth, Dean Hansen, Reggie Hansen, Robert Jenson, Eric Langston, McQue Murphy, Ray Noyes and Bob Robins, dba Water Hollow Grazing Association, Plaintiffs and Respondents,

v.

Elliot CRANE and Wanda S. Crane, Defendants and Appellants.

No. 18530.

Supreme Court of Utah.

April 23, 1984.

**34.** *Id.*

Wallace D. Hurd, Salt Lake City, for defendants and appellants.

R. Don Brown, Richfield, for plaintiffs and respondents.

OAKS, Justice:

This is a suit by the twelve members of an unincorporated grazing association to establish the existence of an easement by prescription to drive their cattle across defendants' land in the spring and fall. The district court decreed the easement. We affirm.

The facts are essentially undisputed. The issues concern the inferences to be drawn from the facts, the application of the facts to the law, and disputes over questions of law.

Defendants own about 1,950 acres of land adjoining the Fishlake National Forest approximately ten miles east of Salina. Their property lies on either side of and includes Water Hollow Canyon. A dirt road follows this canyon in a northeasterly direction from Salina Creek and the highway for about three miles to the west boundary of defendants' property. It then crosses that property for about two miles to the boundary of the national forest. Since 1947, 30,000 acres in this area of the national forest—the Water Hollow C & H Allotment—has been designated for grazing 681 cattle. The twelve plaintiffs are

the current holders of these 681 permits. Functioning as the Water Hollow Grazing Association, an unincorporated association, plaintiffs hire riders to move their cattle up Salina Canyon and Water Hollow Canyon to the allotment area in the spring and to bring them back in the fall. They cross defendants' property en route each way.

The ultimate issue on this appeal is whether the district court was correct in holding that plaintiffs have an easement by prescription to drive their cattle across defendants' land. The terms of the court's decree, entered June 8, 1982, are set out in the footnote.[1]

We note at the outset that there is no claim that the use of the water hollow trail made it a public road. *Compare Leo M. Bertagnole, Inc. v. Pine Meadow Ranches,* Utah, 639 P.2d 211 (1981); *Deseret Livestock Co. v. Sharp,* 123 Utah 353, 259 P.2d 607 (1953).

## I. EASEMENT IN GROSS, ACQUIRED BY PRESCRIPTION

 Plaintiffs claim an easement. Since the claimed easement is not appurtenant to any particular dominant estate (none of the plaintiffs owns land adjoining defendants), it is an easement in gross. *Deseret Livestock Co. v. Sharp,* 123 Utah at 358, 259 P.2d at 610; *Ernst v. Allen,* 55 Utah 272, 277, 184 P. 827, 829 (1919). Legal requirements pertaining to the dominant and servient estates and to easements by implication or necessity (such as unity of title followed by severance) are therefore inapplicable.

 Like other easements, an easement in gross can be acquired by prescription. H.T. Tiffany, *The Law of Real Property* § 759 (3d ed. 1939); 25 Am.Jur.2d *Easements and Licenses* § 43 (1966). An easement by prescription arises under our common law from a use of the servient estate that is "open, notorious, adverse, and continuous for a period of 20 years." *Jensen v. Brown,* Utah, 639 P.2d 150, 152 (1981), and cases cited. A use need not be "regular" or "constant" in order to be "continuous." All that is necessary is that the use be as often as required by the nature of the use and the needs of the claimant. *Richards v. Pines Ranch, Inc.,* Utah, 559 P.2d 948, 949 (1977).

The defendants attack the district court's finding of an easement by prescription on two grounds: (1) plaintiffs' use was permissive rather than adverse, and (2) there was no evidence of the requisite period of use by any individual plaintiff or his predecessors.

## II. NATURE OF USE—PERMISSIVE OR ADVERSE

The Water Hollow trail had been used since sometime prior to 1936. In that year, it was used by sheepherders to bring supplies to their camps. Beginning in 1943, cattle were moved across the trail annually. The Water Hollow Grazing Association was formed about 1950, and since that time cattle have been moved across the trail each year. The number of cattle approximated 150 in the spring and 400 in the fall.

**1.** 1. [Plaintiffs] being the current grazing permit holders for the Water Hollow Cattle Allotment of the Fishlake National Forest are hereby determined to be the lawful owners of an easement consisting of a right of way and stock trail for the transportation of cattle across the Defendants' property as follows: [along the floor of water hollow—legal description given].

2. The easement owners are entitled to transfer cattle across the described property one day in the spring of each year and up to ten days in the fall of each year, subject to the following limitations:

(a) The Plaintiffs shall notify the Defendants of the transfer days at least five (5) days in advance of such dates.

(b) The Plaintiffs may transfer up to 350 head of cattle during the 10 days in the fall.

(c) The Plaintiffs will provide two men in the spring and one man for each day in the fall for the purpose of controlling and maintaining the segregation of the animals of the Plaintiffs and Defendants.

(d) The Plaintiffs shall complete the transfer of cattle across the easement in three or less hours on each crossing and insure that the cattle are not allowed to graze during transit.

(e) The Defendants are entitled to keep and maintain gates with locks subject to provision of a key for each lock to a representative of the Plaintiffs.

(Cattle introduced onto the range at other points would "drift" upward during the summer, so more would need to be brought out by this trail than were driven in by it.)

Defendants purchased their property in 1948. In 1953, they improved the Water Hollow trail across their property into a dirt road. In about 1963, because of trouble with trespassers, defendants installed a locked gate across the road at the western boundary of their property.

Defendants provided the Water Hollow Grazing Association with a key to their gate, which the riders used each spring and fall when they drove the cattle over the road. Defendants characterize this provision of a key as the act of a good neighbor. Plaintiffs insist that the key was provided because defendants recognized plaintiffs' right to continue to use the road. Defendants' provision and the association's use of the key is therefore susceptible to different interpretations. *Cf. Vigil v. Baltzley,* 79 N.M. 659, 448 P.2d 171 (1968) (court found adverse use and easement by prescription even though "adverse" users had key).

Horace J. Horne, president of the association beginning in 1950, testified that sometime in the period of 1950 to 1957 defendant Elliott Crane told him he was going to lock the gate and stop the association from going through. Horne testified: "I told him if he did, we would do like he did before when it was locked out. We would break it down and go through." Horne said that the next time he talked to the association's rider he learned that Elliott Crane had given him a key. Horne had no further discussions with defendant Elliott Crane on that subject.

Byron Allred, who was also president of the association for a time, testified that on one occasion in the spring of 1974 Elliott Crane refused to provide a key to the lock because "he wasn't going to let us through that year." Allred said that access was denied to about 60 cattle in this manner. In contrast, Elliott Crane testified that when he denied access in 1974, "they cut the fence and the gate and went through anyway so it didn't make any difference."

In any event, in the fall of 1974 the gate was not locked and 300 or 400 head of cattle were moved down the dirt road across defendants' property.

Dent Sorensen, who worked as the rider for the association for about ten years in the period between 1953 and about 1977, and participated during some of the fifteen other years that his father worked as the rider, testified that on ten or fifteen occasions he cut wire in a fence or a gate in order to drive association cattle through the defendants' property. He always restored the wire after the cattle were through. He did this both before and after the gate was installed. Once the gate was installed and locked, he had a key most of the time, but he just "sawed the gate in two" when he didn't.

■ The district court's first conclusion of law was: "The individual plaintiffs have established an adverse use for the requisite period for establishing of an easement." As noted above, the evidence of adverseness is conflicting and ambiguous. However, in view of the association president's insistence during the 1950's that they had a right to use the trail and would force their way through if necessary and in view of the testimony that the association riders in fact forced their way through the fence or gate when they did not have a key during the period from 1950 to 1980, we cannot say that the evidence clearly preponderates against the district court's finding that the plaintiff's use was adverse to rather than by permission of defendants. "Because of the presumption that the use of another's land is adverse to him, the owner has the burden to show that the use was under his permission as distinguished from against it." *Lunt v. Kitchens,* 123 Utah 488, 491, 260 P.2d 535, 537 (1953). Defendants failed to fulfill the burden of proof that the plaintiffs' evidence had put upon them. We sustain the finding that the plaintiffs' use was adverse.

### III. USE BY INDIVIDUAL PLAINTIFFS OR ASSOCIATION FOR REQUIRED PERIOD

Defendants argue that there was no evidence that any individual plaintiff had used

the trail openly and continuously for 20 years prior to 1980 when defendants denied plaintiffs access across their property. There *was* such evidence as to plaintiffs Vernon Crane and J. B. Crane. The testimony showed that both of these association members have had their Water Hollow grazing permits continuously since 1949 or 1950 and have driven their cattle across defendants' trail or road annually since that time. While these two plaintiffs have not always participated in this drive personally, it is sufficient that their cattle have been driven by their agents—the riders employed by the association of which they are members.

Each of the other ten plaintiffs acquired his cattle grazing permit less than 20 years prior to 1980, but he acquired it from a predecessor who had been driving cattle across the trail or road since the association was formed in 1950. As to these ten plaintiffs, the legal issue is whether an easement in gross acquired by a predecessor could be transferred to a successor by purchase or descent and/or whether a successor user could tack on the period of his predecessor's use for purposes of computing the 20-year period of prescription. In this connection, defendants point out that the association cannot have acquired the easement because an unincorporated association is not a legal entity that can hold title to property. In addition, defendants argue that proof of use by the association cannot satisfy the requirement of proof of use by the individual plaintiffs.

Defendants' attack on the plaintiffs' easement by prescription fails for two reasons.

### A. *Transferability of easement in gross.*

■ According to the traditional general rule, an easement in gross is merely a personal interest in the real estate of another, and it cannot be transferred by assignment, inheritance, or otherwise. *Ernst v. Allen*, 55 Utah at 276–77, 184 P. at 829; *Maw v. Weber Basin Water Conservancy District*, 20 Utah 2d 195, 197, 436 P.2d 230,

232 (1968); 28 C.J.S. *Easements* § 4(b) (1941); Annot., 130 A.L.R. 1253 (1941). Under that general rule, none of these ten plaintiffs could prevail since none could have acquired the easement of a predecessor, and, as defendants maintain, none proved that he personally had driven his cattle across the lands in question for over 20 years.

■ However, in the circumstances of this case, the general rule is either inapplicable or subject to an exception. An easement in gross that is not transferable is often referred to as "a noncommercial easement in gross," as in this Court's opinion in *Maw v. Weber Basin Water Conservancy District*, 20 Utah 2d at 197, 436 P.2d at 232. In contrast, modern cases generally state that easements in gross are transferable when they are commercial in character. This idea apparently began with cases involving easements in gross for railroads, telephone, telegraph and electric power lines, pipelines, and ditches. Easements of that type have been held transferable almost without exception from early times. 3 R. Powell, *The Law of Real Property* ¶ 419 (1981). Apparently generalizing from these precedents, the *Restatement of Property* § 489 (1944) declares: "Easements in gross, if of a commercial character, are alienable property interests." Professor Powell affirms that this statement is "a true photograph of the net distillation of American law on the topic." 3 R. Powell, *The Law of Real Property* ¶ 419 (1981).

Modern cases illustrative of the proposition that easements in gross of a commercial character are transferable include *Kansas City Area Transportation Authority v. Ashley*, Mo.App., 485 S.W.2d 641, 645 (1972); *Banach v. Home Gas Co.*, 12 App.Div.2d 373, 211 N.Y.S.2d 443 (1961); *Sunset Lake Water Service District v. Remington*, 45 Or.App. 973, 609 P.2d 896 (1980); and *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 143 S.E.2d 803 (1965). Another authority even refers to "a growing recognition" of the assignability of all easements in gross, except those intended to benefit only the first recipient. H.T.

Tiffany, *The Law of Real Property* § 761 (3d ed. Supp.1983 at 93).

■ For purposes of the issue in this case, we approve and apply the following definition: "An easement in gross is of a commercial character when the use authorized by it results primarily in economic benefit rather than personal satisfaction." *Sandy Island Corp. v. Ragsdale*, 246 S.Ct. at 442, 143 S.E.2d at 807. The easement in this case involves a herd of cattle being driven to their summer range. The cattle are being raised for profit rather than for personal use. That falls within the definition of a commercial use. An easement in gross for this purpose is therefore transferable under the authorities cited above. For purposes of computing the period of use necessary to establish an easement in gross, the same reasons that dictate the transferability of a perfected easement in gross establish that one user can tack his use onto the use of his predecessor. That rule applies to the plaintiffs in this case.

■ Since the evidence showed continuous use of the trail or road by each plaintiff or his predecessor during the entire period of the association's life, 1950 to 1980, plaintiffs proved the period of use necessary to establish an easement by prescription. We therefore sustain the district court's conclusion on this basis.

B. *Reliance on use by other association members.*

In the alternative, plaintiffs' easement can also be established by reliance on use by or through the association and its other members. We reject defendants' argument to the contrary.

■ As a general rule, an unincorporated association cannot hold or transfer title to property. 6 Am.Jur.2d *Associations and Clubs* § 13 (1963); Annot., 15 A.L. R.2d 1451 (1951). But this rule does not preclude all consideration of the effect of the activities of an association on the com-

mon property ownership of the members of the association.

For example, it has been held that a conveyance to an unincorporated association made up of an ascertainable membership will be given effect as a conveyance to the members as individuals. *County of Trinity v. Rourke*, 275 Cal.App.2d 628, 79 Cal.Rptr. 902 (1969); *Comstock v. Dewey*, 323 Mass. 583, 83 N.E.2d 257 (1949); *Bradley v. O'Hare*, 11 A.D.2d 15, 202 N.Y.S.2d 141 (1960) (Breitel, J.); *Venus Lodge No. 62 v. Acme Benevolent Association*, 231 N.C. 522, 58 S.E.2d 109, 15 A.L.R.2d 1446 (1950); *Rhode Island Association for the Blind v. Nugent*, 99 R.I. 187, 206 A.2d 527 (1965); 7 C.J.S. *Associations* § 35 (1980). Utah law seems to contemplate this result, since Utah R.Civ.P. 17(d) provides that when two or more persons transact any business under a common name as an association "any judgment obtained against the defendant in such case shall bind the joint property of all the associates in the same manner as if all had been named defendants and had been sued upon their joint liability."

■ By the same token, prescriptive use of property by the members of an association for the purposes of the association should be the basis for the acquisition of an easement in gross by the individual members of the association. Such an easement would not be acquired by the association (unless it had trustees or another capacity to hold title to property), but the activities of its members would, because of the association and within the limit of its purposes, inure to the benefit of all of the members, just like a conveyance to the association.

Thus, in *O.K.C. Corp. v. Allen*, Tex.Civ. App., 574 S.W.2d 809 (1978), the court held that an unincorporated association which held land adversely for the required time and in the required manner could acquire title by adverse possession.[2] The court

---

**2.** Since the association in the cited case—a church congregation—was a charitable organization holding title to its property through trustees, the easement vested in the trustees. Charitable organizations do not have individual members who can take title to property in the man-

held that for purposes of perfecting an easement by prescription, the possession of the individual members for the purposes of the association was the possession of the association and all of its members. Similarly, it has frequently been held and stated that the adverse possession of the members or trustees of an unincorporated religious association (congregation) can result in their acquisition of title by adverse possession or prescription. *Burton v. Griffith*, 226 Ark. 641, 291 S.W.2d 516 (1956); *Burrows v. Holt*, 20 Conn. 459, 465 (1850) (dictum); *Henson v. Bridges*, 218 Ga. 6, 126 S.E.2d 226 (1962); *Trauger v. Sassaman*, 14 Pa. 514 (1850).[3] *See generally*, Annot. 4 A.L.R.2d 123 (1949), which also cites some cases to the contrary.

 Relying on the authorities cited above, we hold that plaintiffs could properly rely on the use of other association members for purposes of perfecting their own easement by prescription. Under this alternative, an absence of proof that the cattle of every single plaintiff were driven across defendants' road in every single year would not defeat the claim of easement by prescription since there was proof that the association, comprised of all of these plaintiffs and their predecessors, had employed riders who had driven cattle owned by association members across defendants' road each year for more than 20 years. We therefore sustain the district court's conclusion that each plaintiff had acquired an easement in gross.

### IV. TERMS OF THE DECREE

 The decree (quoted in note 1 *supra*) appropriately limits the easement in gross to the nature and extent of the use by which it was acquired. *Nielson v.*

*Sandberg*, 105 Utah 93, 103–04, 141 P.2d 696, 701 (1943); Tiffany, *supra*, § 808; 3 R. Powell, *supra*, ¶ 416. However, two terms essential to that limitation seem to have been omitted, perhaps inadvertently.

Whereas the decree is limited to 350 cattle in the fall, it has no limitation in the spring. There was no evidence of use by more than 150 cattle in the spring. The decree should be so limited.

Similarly, since the use that gave rise to the easement in gross was use by the holder of a grazing permit for the purpose of access to the lands of the allotment, which use is implemented through an association of permit holders rather than by each permit holder individually, the decree should also be so limited. By this means the duration of the easement will be limited to the duration of grazing permits on allotment lands, and the use of the easement will be less burdensome for the landowners because they can limit it to cattle being driven by an association rather than by individual permit owners.

As modified by this opinion, the decree is affirmed, each party to bear own costs.

HALL, C.J., and STEWART, and DURHAM, JJ., concur.

HOWE, Justice (concurring):

I concur in the judgment and opinion of the Court except as to Part IIIB, as to which I express no opinion.

---

ner permissible for other unincorporated associations.

**3.** Other cases sustaining adverse possession in this circumstance apparently rely on the effect of a statute authorizing an unincorporated association to take title to property. *Veech v. Trinity Episcopal Church*, 3 Pa.D. & C. 395 (1922); *Casey v. Valentour*, Miss., 218 So.2d 863 (1969); *Gold v. Cozart*, 173 N.C. 612, 92 S.E. 600 (1917).