391 P.2d 300

George C. MAW et al., Plaintiffs and Appellants,

v.

WEBER BASIN WATER CONSERVANCY DISTRICT and Ogden Duck Club, a Utah corporation, Defendants and Respondents.

No. 9950.

Supreme Court of Utah.

April 17, 1964.

6. 70-3-12, U.C.A.1953.

Glen E. Fuller, Salt Lake City, for appellants.

Neil R. Olmstead, Ogden, E. J. Skeen, Salt Lake City, for respondents.

WADE, Justice:

The plaintiffs and appellants in this action are a surviving son and grandsons of Annie C. Maw. The grandsons are surviving sons of three deceased sons of Annie C. Maw. The surviving son is George C. Maw, and the deceased sons were Wilmer J., Rufus J. and Gilbert Maw. The plaintiffs and appellants brought this action seeking compensation and damages for loss of certain shooting privileges on the shooting grounds of the Ogden Duck Club, one of the defendants and respondents herein.

From the record, consisting of pleadings, exhibits and a deposition, it appears that in 1936, Annie C. Maw as the owner of Sections 20, 17 and 18, in Township 7 North, Range 2 West, Salt Lake Meridian, located in Weber and Box Elder Counties, Utah executed an instrument entitled "Right-of-Way Agreement" wherein she granted a convenient right-of-way over the above described lands to the Ogden Duck Club for the purpose of allowing its members access to its clubhouse and shooting grounds. The right-of-way was to continue as long as the clubhouse located in Sec. 12, Township 7 North, Range 3 West, Salt Lake Meridian and the shooting grounds were maintained by the respondent Duck Club for the purpose of shooting wild fowl. The instrument further provided that Annie C. Maw would maintain in a travelable condition an existing road located along the north rod of the east half of Sec. 20 and which is a part of the right-of-way described above in consideration for nonassessable shooting privileges granted therein to the sons of said Annie C. Maw, named therein as Wilmer J. Maw, Gilbert Maw, Rufus J. Maw and George C. Maw. The instrument further provided "that in any year the said Wilmer J. Maw, Rufus Maw, Gilbert Maw and George Maw may designate one son for each thereof to shoot and enjoy the privileges hereunder in place of such son's father." The instrument concluded by providing that it should be binding upon the heirs, assigns and successors in interest of the parties thereto. The plaintiffs and appellants herein were allowed the shooting privileges pro-

vided in this instrument until after the Ogden Duck Club quit-claimed any interest they might have in the right-of-way to W. John Maw & Sons, Inc. and Grace B. Maw, after which, some time in 1958, these privileges were revoked by the Club. It does not appear that the grantees in this deed were aware of the conveyance until after the Maws were excluded from shooting privileges and this suit was commenced.

W. John Maw & Sons, Inc. and Grace B. Maw were the successors in interest of the lands described in the instrument executed by Annie C. Maw and the Duck Club. On July 15, 1957, they executed a land purchase contract with the United States Department of the Interior, Bureau of Reclamation, which included the lands involved in this suit. Before agreeing to sell these lands to the Government which were needed for the Willard Dam and Reservoir part of the Weber Basin Project, Orlo Maw, as president of W. John Maw & Sons, Inc. informed the United States Government and the Weber Basin District of the 1936 agreement and its provisions, and that it would not sell the lands unless the shooting privileges of his uncle and cousins were protected; otherwise, such rights would be litigated in a condemnation proceeding if the Government wished to acquire the lands. The Weber Basin Water Conservancy District thereupon wrote a letter to W. John Maw & Sons, Inc., dated July 5, 1957, wherein it was stated that state leases, water rights, easements, licenses or duck club shooting privileges were not included in the property interests in the tracts acquired for the Willard Dam and Reservoir, and further stated: "Any such property interests which will be required in the construction of the Dam or which will be damaged or destroyed will be appraised at a later date and an offer to purchase will be made." Only after the receipt of this letter was the land purchase contract referred to above executed.

In the course of the construction of the Willard Dam & Reservoir the former road to the Duck Club was destroyed and obliterated, whereupon the clubhouse was moved approximately a mile west of where it had originally been located and the Duck Club was provided with an alternate route to its clubhouse.

The court granted the respondents' motion to dismiss the complaint with prejudice because it concluded that the 1936 "Right-of-Way Agreement" is not ambiguous on its face, and that the shooting privileges were only for the benefit of the named sons of Annie C. Maw. If further concluded that since the shooting privileges depended upon maintaining the road referred to in the agreement in a travelable condition, and since the clubhouse of the respondent Duck Club had to be moved to a new location so that it was no longer feasible to use the roadway mentioned above, and since the relocation was due to federal action and

not the fault of either party to the agreement, both parties were excused from performance under the contract. The court also concluded that the Weber Basin Water Conservancy District was not liable to any of the appellants either by way of agreement, estoppel or otherwise for loss of shooting privileges resulting from the purchase of the Maw properties by the United States Government for the Benefit of the Willard Bay Reservoir.

We agree with the court's conclusion that the Duck Club is not responsible for breach of contract. In their complaint appellants allege that "[A]s a result of the construction activities on the Willard Bay Dam Project, the former road through the properties of plaintiffs and said Grace B. Maw and W. John Maw and Sons, Inc., a corporation, was obliterated and destroyed; * * *." The road being obliterated and destroyed made it impossible for the Duck Club to use it and since the right-of-way was the subject matter of the agreement upon which appellants' shooting privileges depended, the court was right in concluding that the Duck Club was excused from further performance of its obligation to extend shooting privileges.[1]

However, we cannot agree with the other conclusions of the court. As shown above, the Duck Club was granted a convenient right of way for access to its clubhouse and shooting grounds over Annie C. Maw's lands for as long as it maintained its clubhouse and shooting grounds for the purpose of shooting wild fowl. This right of access was to be exclusive for the use of the Club and its members, except that Annie C. Maw and her successors in interest were obligated to keep a portion of this right-of-way in a travelable condition, for which service the sons of Annie C. Maw named therein were granted certain nonassessible shooting privileges, which privileges any such named son could in any year designate a son of his own to enjoy such privilege in his stead.

There can be no doubt that at the time the land purchase contract with the United States Government was executed, George C. Maw, one of the appellants and a named son in the 1936 "Right-of-Way Agreement," was entitled to the shooting privileges provided therein. The court erred in dismissing the complaint with prejudice against the Weber Basin Water Conservancy District, for it is clear that in order to avoid condemnation proceedings it agreed to evaluate and pay for any shooting privileges if the construction of the Dam caused their loss. There can be no doubt that the activities in connection with the construction of the Dam did cause such loss. Had not the purchase contract

1. 17A C.J.S. Contracts § 466(1), page 628, and Parrish v. Stratton Cripple Creek Mining & Development Co., 10 Cir., 116 F.2d 207.

with the United States Government been executed, it would have been necessary to institute condemnation proceedings. In condemnation proceedings the value of the "shooting privileges" would have been a proper element of damages to be considered by a jury in determining the value of the land taken. The Water Conservancy District merely agreed to do at a later date what it would have been compelled to do sooner had the owners refused to sell the lands for the project.

Reversed. Costs to appellants.

HENRIOD, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.